UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA  : | |
| : | |
| v.   : | Criminal No.: 05-372 (JDB) |
| : | |
| EDDIE DUBOSE,   : | |
| : | |
| **Defendant.**   : | |

**GOVERNMENT'S RESPONSE TO DEFENSE MOTION
TO SUPPRESS PHYSICAL EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's motion to suppress evidence. As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at the hearing:

STATEMENT OF FACTS

On September 7, 2005, members of the Metropolitan Police Department's 4th District Focus Mission Unit (hereinafter MPD) responded to the 600 block of Emerson Street, NW, Washington, DC. They had previously received a complaint via email that the defendant, Eddie Dubose, was known to sell drugs from a blue van which is usually parked in the 600 block of Emerson Street, NW.1/   Officers went to the 600 block of Emerson Street, NW, on September 7, 2005 at approximately 4:30 that afternoon. They were in an unmarked car, however, they were wearing vests and badges that clearly identified them as police. While they initially saw no one in the block, they did see a blue Chevrolet van in the area, however, the van apparently had a different tag number than the email described. It was unoccupied. The officers then went into the north alley of the 600 block

---

1/None of the officers knew Mr. Dubose prior to this encounter.

of Emerson Street, NW, where they saw an individual getting out of a green 2-door Lexus with MD tags MGH-123 parked behind 631 Emerson Street, NW. As the person left the Lexus, he walked through the alley, constantly turning back to look at the officers. They followed, out of the alley onto 7th Street, NW. When they arrived in the 5000 block of 7th Street, NW, Officer Kyle made contact with the person, later identified as the defendant, by introducing himself as an officer, and explaining that they were investigating a drug complaint. Officer Kyle also asked whether he lived in the area, and had seen any activity. The defendant responded that he did not live in the area, but that had taken a bus there to visit a friend.[2] The conversation continued, and the officers asked the defendant whether he had anything illegal, including weapons. He responded that he had a knife attached to a string around his neck for protection. The officers removed the knife for their safety, and discovered that it was a dagger that was about 5 and ½ inches long. Officers asked for identification, and the defendant produced a driver's license in the name of Eddie Dubose. They asked the defendant whether he had any keys on him, and he produced three sets of keys, however, when they asked whether the keys belonged to cars that were parked around the area, the defendant replied no. He was arrested for possession of the knife. Initially, the defendant acted as if he were submitting to the arrest, however he then broke away from the officer and fled. He was eventually stopped and subdued after a brief struggle. Incident to the arrest, the defendant was searched, and found to have $1,562 in his right front pants pocket. The car keys and a cell phone were also recovered from his pocket. One of the officers took the keys, and went over to the Lexus that the defendant had exited. The officers activated the Lexus alarm keypad, and the green Lexus that the

---

[2]/ Officers knew that the bus comment was not true, having just seen him exit the green Lexus.

defendant had exited chirped in response. However, officers did not enter the vehicle at this time. At that point the defendant, who was in handcuffs and barefoot; jumped up and attempted to flee a second time, and had to be apprehended again. Another officer on the scene recognized that the vehicle matched the description of a vehicle which had been involved in a drug sale which had occurred slightly less than 30 days prior, on August 11, 2005, in that same area.3/ The officers notified the undercover officer involved in that sale, and the undercover officer responded to the scene and positively identified the Lexus from which the defendant alighted as the Lexus involved in that sale. At that point, the officers seized the vehicle for civil forfeiture and evidence in the other sale, and the car was subsequently towed to the police station. At the station, a canine officer caused a drug detecting dog to sweep the vehicle. The dog hit on several spots in the car, including the trunk, the driver's side door and the passenger. Officers then searched the vehicle, and found a .40 caliber SIG Sauer pistol loaded with 12 rounds in the magazine and 1 in the chamber inside the glove box. Also in the glove box was another fully loaded magazine with 12 rounds. On the floorboard behind the driver's seat, there was a green bag similar to a CD case, which contained a 9 pieces of plastic wrapped marihuana, and 14 ziplocks containing marihuana. There was also a scale with white and green residue, and a piece of plastic with a large rock of cocaine inside. There was a large rock of cocaine in the center console of the vehicle, and another ziplock of marihuana in the back of the car on the floorboard (not in the same CD type bag). There was an additional piece of plastic wrapped cocaine in the trunk of the car. Subsequent investigation revealed that the Lexus was not

---

3/ During that sale, an undercover officer had purchased drugs from an person who was not Mr. Dubose. However, the person went to a green Lexus with MD tags MGH-123 to get the drugs which were ultimately sold to the officer. The officer could not see inside the Lexus to determine the identity of the driver because the windows were too darkly tinted.

registered to anyone–neither through the tags or the VIN. Paperwork found in the vehicle included mail matter addressed to the defendant, and a photo album with photos of the defendant and what appeared to be one of his children. While the officers prepared to have the car towed to the station, an individual who identified himself as the defendant's brother stated that the car belonged to his brother, Eddie Dubose. Officers subsequently learned that 631 Emerson Street, NW is the home of the defendant's mother.

## ARGUMENT

**1. The initial encounter between the defendant and the police was consensual, and the arrest was based on probable cause.**

Despite the fact that the defense characterizes the initial contact between the defendant and the officers as a seizure or an investigatory stop, which must be based on probable cause or reasonable suspicion, the actions of the police in this situation did not go that far. Here, the initial encounter between the defendant and the police was consensual. Initially, the officers did not know the identity of Eddie Dubose. None of them had met him before, nor did they know what he looked like. They were simply following up on a complaint they had received by going to the area in question and speaking with a citizen that they encountered therein.4/ Every time a police officer engages a citizen in conversation the encounter is not automatically escalated into an arrest or seizure with constitutional implications. See Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984). See also U.S. v. Coates, 495 F.2d 160 (1974). Here, the officers did nothing other than talk to Mr. Dubose, and

---

4/ The government is not arguing that the initial stop of the defendant in this situation is based on probable cause or artiulable suspicion provided by the email complaint, largely due to the fact that the complaint identified the defendant by name, but the officers did not immediately know that the person they were speaking with was in fact Eddie Dubose.

there is no indication that Mr. Dubose was not willing to have the conversation with the officers. During this initial conversation, the defendant was not restrained or confined, and the police did not touch him in any way. Probable cause or articulable suspicion are not required for such consensual police encounters, and consequently, the 4th Amendment is not implicated. The nature of the encounter changed, however, when the defendant told the officers that he was armed. Once the defendant told the officers that he had a weapon, it was permissible for the police to frisk him and recover the weapon. See Terry v. Ohio, 392 U.S. 1 (1968). Moreover, here, after telling the officers that he had the knife for protection, the defendant consented to the officer's request to retrieve the knife from around his neck. The recovery of the weapon gave them probable cause to arrest, and the defendant was in fact arrested at that time. The money, the cell phone and the keys on the defendant' person were recovered during a valid search incident to arrest. See, e.g.,Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") See also Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (authorizing search incident to arrest.)

**2. The search of the vehicle did not violate the 4th Amendment**.

The officers tied the defendant to the vehicle based on their observations of him exiting the vehicle, and the discovery of the keys for the vehicle on his person. After learning that the defendant was the Eddie Dubose referenced in the complaint, the officers were aware that he was reputed to be involved in selling drugs. Moreover, after being placed under arrest, the defendant attempted to flee the scene, and even when apprehended, continued to struggle and resist the officers. Finally, when the officer involved in the prior drug sale identified the car as having recently participated in

a drug sale, the officers had probable cause to search the vehicle for drugs. See United States v. Melvin Wider, 951 F.2d 1283 (1991) (probable cause to search a nearby automobile associated with the defendant based on police knowledge that defendant was in recent possession of drugs packaged for distribution.)  See also United States v. Caroline, 791 F.2d 197 (1986)(probable cause to search a vehicle associated with defendant where vehicle is owned by a third person, and it is known to the police that the defendant had been inside the car and that the defendant had recently participated in criminal activity.)

But even if the facts as described above did not amount to probable cause to search the vehicle, there was certainly a basis to seize the vehicle for civil forfeiture and or further investigation.  The undercover officer had positively identified the vehicle as having been involved in a recent drug sale.  The car did not come back as registered to any person. Consequently, the police were justified in seizing the car, and having it towed back to the police station. Once the car was lawfully in police custody, and knowing what they knew about Eddie Dubose and the car's involvement in the prior drug sale, the police were certainly justified in having it checked out by a narcotics detection dog.  Finally, the dog's alert provided probable cause for the search of the vehicle that yielded the contraband. See  U.S. v. Trayer,  898 F.2d 805 (1990), and Illinois v. Caballes, 543 U.S. 405 (2005).

CONCLUSION

In conclusion, for these reasons, and any other reasons as may appear to the Court in a hearing on this matter, the United States respectfully submits that defendant's motion to suppress physical evidence should be denied.

                              Respectfully submitted,
                              KENNETH L. WAINSTEIN
                              UNITED STATES ATTORNEY


                              _____/s/_____
                              WANDA J. DIXON
                              ASSISTANT UNITED STATES ATTORNEY
                              555 Fourth Street, N.W.
                              Fourth Floor, Room 4122
                              Washington, D.C. 20530
                              (202) 514-6997