UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No.: 05-372 (JDB) |
| | : | |
| **EDDIE DUBOSE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENSE MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following supplement to its response to the defense motion to suppress physical evidence. At a hearing on the motion held on February 24, 2006, defendant argued that his arrest for carrying a dangerous weapon was not based on probable cause, since there were no facts to indicate that the defendant carried the weapon for an unlawful purpose. See United States v. Christian, 187 F.3d 663 (1999). Notwithstanding defendant's argument, the government contends that the vehicle in this case was lawfully seized for administrative forfeiture, and that the subsequent search of the vehicle was legally valid as based on probable cause due to an alert by a narcotics dog. Alternatively, the items found in the search should not be suppressed because they would have been found under the doctrine of inevitable discovery, since the vehicle could have been lawfully searched as a result of an inventory of its contents. Finally, since the vehicle is not lawfully registered to anyone, it could also have been towed or seized as a result of a violation of the vehicle registration laws of the District of Columbia, and subject to a valid inventory search as a result of that process.

## STATEMENT OF FACTS

On September 7, 2005, members of the Metropolitan Police Department's 4th District Focus Mission Unit (hereinafter MPD) responded to the 600 block of Emerson Street, NW, Washington, DC. They had previously received a complaint via email that the defendant, Eddie Dubose, was known to sell drugs from a blue van which is usually parked in the 600 block of Emerson Street, NW.1/   Officers went to the 600 block of Emerson Street, NW, on September 7, 2005 at approximately 4:30 that afternoon. They were in an unmarked car, however, they were wearing vests and badges that clearly identified them as police. While they initially saw no one in the block, they did see a blue Chevrolet van in the area, however, the van apparently had a different tag number than the email described.  It was unoccupied. The officers then went into the north alley of the 600 block of Emerson Street, NW, where they saw an individual getting out of a green 2-door Lexus with MD tags MGH-123 parked behind 631 Emerson Street, NW.  As the person left the Lexus, he walked through the alley, constantly turning back to look at the officers. They followed, out of the alley onto 7th Street, NW.  When they arrived in the 5000 block of 7th Street, NW, Officer Kyle made contact with the person, later identified as the defendant, by introducing himself as an officer, and explaining that they were investigating a drug complaint. Officer Kyle also asked whether he lived in the area, and had seen any activity.   The defendant responded that he did not live in the area, but that had taken a bus there to visit a friend.2/   The conversation continued, and the officers asked the defendant whether he had anything illegal, including weapons.  He responded that he had a knife

---

1/ None of the officers knew Mr. Dubose prior to this encounter.

2/ Officers knew that the bus comment was not true, having just seen him exit the green Lexus.

attached to a string around his neck for protection. The officers removed the knife for their safety, and discovered that it was a dagger that was about 5 and ½ inches long. Officers asked for identification, and the defendant produced a driver's license in the name of Eddie Dubose. They asked the defendant whether he had any keys on him, and he produced three sets of keys, however, when they asked whether the keys belonged to cars that were parked around the area, the defendant replied no. He was arrested for possession of the knife. Initially, the defendant acted as if he were submitting to the arrest, however he then broke away from the officer and fled. He was eventually stopped and subdued after a brief struggle. Incident to the arrest, the defendant was searched, and found to have $1,562 in his right front pants pocket. The car keys and a cell phone were also recovered from his pocket. One of the officers took the keys, and went over to the Lexus that the defendant had exited. The officers activated the Lexus alarm keypad, and the green Lexus that the defendant had exited chirped in response. However, officers did not enter the vehicle at this time. At that point the defendant, who was in handcuffs and barefoot; jumped up and attempted to flee a second time, and had to be apprehended again. Another officer on the scene recognized that the vehicle matched the description of a vehicle which had been involved in a drug sale which had occurred slightly less than 30 days prior, on August 11, 2005, in that same area.3/ The officers notified the undercover officer involved in that sale, and the undercover officer responded to the scene and positively identified the Lexus from which the defendant alighted as the Lexus involved in that sale. At that point, the officers seized the vehicle for civil forfeiture and evidence in the other

---

3/ During that sale, an undercover officer had purchased drugs from an person who was not Mr. Dubose. However, the person went to a green Lexus with MD tags MGH-123 to get the drugs which were ultimately sold to the officer. The officer could not see inside the Lexus to determine the identity of the driver because the windows were too darkly tinted.

sale, and the car was subsequently towed to the police station. At the station, a canine officer caused a drug detecting dog to sweep the vehicle. The dog hit on several spots in the car, including the trunk, the driver's side door and the passenger. Officers then searched the vehicle, and found a .40 caliber SIG Sauer pistol loaded with 12 rounds in the magazine and 1 in the chamber inside the glove box. Also in the glove box was another fully loaded magazine with 12 rounds. On the floorboard behind the driver's seat, there was a green bag similar to a CD case, which contained a 9 pieces of plastic wrapped marihuana, and 14 ziplocks containing marihuana. There was also a scale with white and green residue, and a piece of plastic with a large rock of cocaine inside. There was a large rock of cocaine in the center console of the vehicle, and another ziplock of marihuana in the back of the car on the floorboard (not in the same CD type bag). There was an additional piece of plastic wrapped cocaine in the trunk of the car. Subsequent investigation revealed that the Lexus was not registered to anyone–neither through the tags or the VIN. Paperwork found in the vehicle included mail matter addressed to the defendant, and a photo album with photos of the defendant and what appeared to be one of his children. While the officers prepared to have the car towed to the station, an individual who identified himself as the defendant's brother stated that the car belonged to his brother, Eddie Dubose. Officers subsequently learned that 631 Emerson Street, NW is the home of the defendant's mother.

## ARGUMENT

**1. The search of the vehicle did not violate the 4th Amendment**.

When the officer involved in the prior drug sale identified the car as having recently participated in a drug sale, the officers had probable cause to search the vehicle for drugs. See

United States v. Melvin Wider, 951 F.2d 1283 (1991) (probable cause to search a nearby automobile associated with the defendant based on police knowledge that defendant was in recent possession of drugs packaged for distribution.)  See also United States v. Caroline, 791 F.2d 197 (1986)(probable cause to search a vehicle associated with defendant where vehicle is owned by a third person, and it is known to the police that the defendant had been inside the car and that the defendant had recently participated in criminal activity.)

**2. Since the vehicle in question had been involved in a drug transaction, it was subject to civil forfeiture, and as such, could be lawfully seized.**

Even if the facts as described above did not amount to probable cause to search the vehicle, there was certainly a basis to seize the vehicle for civil forfeiture and or further investigation.  See D.C. Code Ann. §48-905.02 (a)(4).  See also Florida v. White, 526 U.S. 559 (1999) (Fourth Amendment did not require police to obtain warrant before seizing automobile from public place when they had probable cause to believe that it was forfeitable contraband), and United States v. Fafowora, 865 F.2d 369 (1989) (law enforcement agents effected valid seizure of vehicle used to facilitate sale of controlled substance. )   Here, the undercover officer had positively identified the vehicle as having been involved in a recent drug sale, both by description over the telephone, and as a result of an on scene identification.  Consequently, the police were justified in seizing the car, and having it towed back to the police station. Once the car was lawfully in police custody, and knowing what they knew about Eddie Dubose and the car's involvement in the prior drug sale, the police were certainly justified in having it checked out by a narcotics detection dog.  Finally, the

dog's alert provided probable cause for the search of the vehicle that yielded the contraband. See U.S. v. Trayer, 898 F.2d 805 (1990), and Illinois v. Caballes, 543 U.S. 405 (2005). 4/

**3. Since the car was not lawfully registered to anyone, the police were justified in towing it, and the car was lawfully searched pursuant to the probable cause provided by the narcotics detection dog or pursuant to a valid, inevitable inventory search.**

Here, the facts of the case show that the police checked the car to determine the identify of the lawful owner, however, despite the fact that the car had a license tag, it was not registered to anyone. As such, since the car was not lawfully registered, and since it was parked on a public street, the police had the authority to have the vehicle towed. See, e.g., D.C. Code Ann. §50-1501.04. Consequently, the car was in the lawful custody of the police, and the same analysis involving the narcotics detection dog and the inventory search would apply.

---

4/ Moreover, since the officers knew that the person who drove the car was Eddie Dubose, who had been referenced as a drug dealer, and since they knew that the car itself had been involved in a drug transaction about one month earlier, they would also have been justified in bringing the narcotics detection dog to the scene. The resulting alert by the dog would still have provided probable cause for a search of the vehicle.

## CONCLUSION

In conclusion, for these reasons, and any other reasons as may appear to the Court in any further hearing on this matter, the United States respectfully submits that defendant's motion to suppress physical evidence should be denied.

Respectfully submitted,
KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


_____/s/_____
WANDA J. DIXON
ASSISTANT UNITED STATES ATTORNEY
555 Fourth Street, N.W.
Fourth Floor, Room 4122
Washington, D.C. 20530
(202) 514-6997