UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Cr. No. 05-372 (JDB) |
| | : |
| EDDIE DUBOSE, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL RESPONSE
TO DEFENSE MOTION TO SUPPRESS PHYSICAL EVIDENCE**

BACKGROUND

On February 24, 2006, the Court convened a motion hearing to determine the admissibility of evidence seized from Mr. Dubose[1] and a Lexus automobile.[2] After the hearing, the Court invited the Government to supplement its response to the Defendant's motion to suppress physical evidence with respect to two issues: 1) does the rule in U.S. v. Christian, 187 F.3d 663 (DC Cir. 1999), control regarding the arrest of Mr. Dubose? and 2) assuming Christian does control, what evidence should be suppressed?

The Government filed supplemental pleadings on March 14, 2006, and March 17, 2006. In its responses, the Government conceded that the arrest of Mr. Dubose for carrying a dangerous weapon was illegal under Christian, Government's Supplemental Response to Defense Motion to

---

[1] The evidence seized from Mr. Dubose was a set of car keys belonging to the Lexus, a small knife and U.S. currency.

[2] The evidence seized from the Lexus automobile was a handgun, narcotics and a photo album.

Suppress Physical Evidence at p. 1, but argued that the car keys, knife and U.S. currency recovered from Mr. Dubose should not be suppressed because Mr. Dubose' subsequent resistence of that unlawful arrest was an intervening event which provided a separate basis for arresting Mr. Dubose. Government's Additional Supplemental Response to Defense Motion to Suppress Physical Evidence at p. 1. Citing no new cases, the Government again argued that the handgun, narcotics and photo album recovered during the search of the Lexus should not be spressed because 1) "[t]he search of the car did not violate the 4th Amendment," Govt. Mo. at p. 4, 2) "[s]ince the vehicle in question had been involved in a drug transaction, it was subject to civil forfeiture, and as such, could be lawfully seized," Id. at p. 5, and 3) "[s]ince the car was not lawfully registered to anyone, the police were justified in towing it, and the car was lawfully searched pursuant to the probable cause provided by the narcotics detection dog or pursuant to a valid, inevitable inventory search, Id. at p. 6.

     For the reasons set forth below, none of the "eleventh hour" post-hoc justifications cited by the Government apply in this case, and the Government has failed to establish the legality of the seizure and subsequent search of both Mr. Dubose and the Lexus; therefore, all items seized from both Mr. Dubose and the Lexus must be suppressed.

**ARGUMENT**

1. **Since Mr. Dubose was illegally arrested for Carrying a Dangerous Weapon, all evidence seized on his person must be suppressed.**

     Contrary to the Government's assertion that the Defendant's subsequent resistance of the initial illegal arrest was an intervening event which provided a separate basis for arresting the

Defendant, the Defendant's actions were insufficient to purge the taint of the officer's illegal arrest of the Defendant for carrying a dangerous weapon.

Evidence secured as a result of an illegal search or seizure not admissible at trial. Wong Sun v. United States, 371 U.S.471, 486 (1963). The exclusionary rule was created to "deter constitutional violations by denying the government the benefit of those violations." Segura v. United States, 468 U.S. 796, 804 (1984). The evidence is excluded unless "an intervening event or attenuating circumstance purge[s] the taint of the illegal seizure." Id., See also Taylor v. Alabama, 457 U.S. 687 (1982).

In the instant case, Officer Kyle Ramey testified as follows: Several officers approached the Defendant ans asked to speak with him. Tr. at 7. After confirming his identity, the officers asked the Defendant if he was armed, and the Defendant explained that he was carrying a small knife. Id. The officers retrieved the knife, told the Defendant that he was going to be arrested and began to search the Defendant. During the search, and before the arrest had been effectuated, the police recovered the car keys, U.S. currency and knife. Tr. at 10. There simply was no intervening event or attenuating circumstance to purge the taint of the illegal arrest for carrying a dangerous weapon.

Moreover, even the Court were to conclude that there is an evidentiary basis to find that there was an intervening event or attenuating circumstance, fleeing from or assaulting an officer after an illegal arrest has never been held to be a sufficient "intervening event or attenuating circumstance" in this Circuit. And, given the close casual connection of the illegal police conduct to the subsequent seizure and search of Mr. Dubose, suppression is still the appropriate remedy in this case.

The Government cites two cases in its pleading to support the proposition that the items recovered from Mr. Dubose should not be suppressed because Mr. Dubose's subsequent resistance of that arrest was an intervening event which provided a separate basis for arresting Mr. Dubose. Neither case is from this Circuit and therefore are not controlling. Moreover, each case is readily distinguishable.

In Clark v. United States, 755 A.2d 1026 (D.C. App. 2000), the defendant, while illegally in police custody, made threatening statements to the police. Those statements were later used to prosecute the defendant for threatening a police officer. The District of Columbia Court of Appeals held that the defendant's statements, which the trial court found were voluntarily made, were admissible at trial. The DCCA in Clark, therefore, simply upheld the admission of 1) voluntary statements 2) made while in unlawful police custody. The DCCA never addressed the issue presented in this case; namely, the admission of **physical evidence** obtained from the defendant after an unlawful seizure and search the defendant.

The other case cited by the government, United States v. Bailey, 691 F.2d 1009 (11th Cir. 1982), is a 24 year old case that has never been cited in or adopted in this Circuit.  Allowing the government to bypass the exclusionary rule in this case by claiming that some type of unlawful activity occurred while a defendant was unlawfully in custody would undermine the very protections the Fourth Amendment seeks to enforce.  Admitting the illegally obtained evidence in this case would entice–rather than deter–police misconduct.  The concern that the court expressed in Bailey was the potential immunization for all crimes committed while unlawfully in police custody:

Unlike the situation where in response to the unlawful police action the defendant

4

>merely reveals a crime that already has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct. <u>Clark</u> at 1029, paraphrasing <u>Bailey</u> at 1016-17

This concern, however, is not present in this case. The issue is not the legality of the arrest for the new crime, but rather the admissibility of evidence seized during the course of an unlawful arrest. Thus, the proper balance between these two competing interests in this case should be to allow the Government to file charges for the alleged resisting, not allow the Government to **benefit** from any additional evidence seized. Therefore, the intervening acts are insufficient to cure the illegal arrest and the evidence must be suppressed.

**2. The seizure and search of the Lexus was not supported by probable cause**

Simply re-citing <u>United States v. Wider</u>, 951 F.2d 1283 (D.C. Cir. 1991) and <u>United States v. Caroline</u>, 791 F.2d 197 (D.C. Cir. 1986), the Government again argues that the police "had probable cause to search the vehicle for drugs . . .[w]hen the officer involved in the prior drug sale identified the car as having recently participated in a drug sale." <u>Govt. Supp. Mot.</u> at p. 4. The Government's continued reliance on <u>Wider</u> and <u>Caroline</u>, however, is misplaced. Indeed, as explained in more detail below, the facts of each case contrast so markedly from the facts in the instant case that the Court's reasoning in each case refutes, rather than supports, the Government's argument.

In <u>United States v. Wider</u>, 951 F.2d 1283 (D.C. Cir. 1991), the police received information that the defendant, "a light skinned black male, driving a gray-ish BMW and

5

wearing a BMW hat, was selling drugs in the 300 block of 53rd Street . . ." Id. at 1285. The source of the information was a police informant who had provided "reliable information" to the police "approximately ten times in the past." Id.

"Less than twenty minutes" after being notified that the defendant was presently selling drugs in the 300 block of 53rd Street, the police responded to the area. Id. When the police arrived, they saw a "light skinned black male in a BMW hat" discard a brown bag and begin to walk away from the bag and the officers. Id. The officers' retrieved the bag and found suspected crack cocaine. The officers then stopped and searched the defendant, and found even more crack cocaine "packaged for distribution." Id. "Thirty-five feet away" from where the defendant was stopped, parked on a public street, the police saw a BMW that, based on a check of the car's license plate, was registered to the defendant. The police searched the car and found additional cocaine. Id.

The Court of Appeals upheld the search of the BMW noting, first, that the car was "parked in a public place" and "[o]nce the officers . . . became aware that Wider possessed large quantities of crack, packaged for distribution, and that his automobile was parked nearby, there was a "fair probability" that the vehicle contained *additional* evidence of drug dealing activity and therefore probable cause to search it." Id. at 1286 (emphasis added).

In Caroline, 791 F.2d 197 (D.C. Cir. 1986), two officers observed two men "hurriedly" leave a clothing store and then saw one of the men enter a second store while the other man waited outside "looking up and down the street." Id. at 198. Less than a minute later, the man who entered the second shop came out and both men ran to a nearby Datsun 280Z automobile. The men got in the car and drove off. Believing that a crime may have occurred, the police

interviewed the owner of the second store and learned that the man who the police had seen go in the second store and run out less than a minute later had tried to steal several articles of clothing from the store. Id.

The officers broadcast a look-out for both men and the car. Ten minutes later, another officer saw both suspects "parking the car . . . [and] walking away from the vehicle." Id.. at 199. The officers who called in the look-out responded to the scene and began to follow the suspects. The officers saw the suspects enter and exit four more stores in the same suspicious manner as the first two stores. Id. After interviewing the owner of the last store the suspects entered, and learning that two items had been recently stolen from the store, the officers directed the suspects to be stopped. After the stop, the police found in the suspects' possession the items reported stolen by the owner of the last store the suspects entered. Id. Both suspects were then placed under arrest.

After the arrests, one of the suspects gave the police a set of car keys. The suspect confirmed that the keys belonged to the Datsun 280Z and that the car was registered to a friend of the suspect. The police went to the car and saw "what appeared to be a new leather jacket . . . and new leather handbag." Id. at 199. The police then searched the car and, inside the leather bag, found a sawed-off shot gun.

The Court of Appeals upheld the search of the car based on the following factors: the police had been observing the suspects for more than an hour, and during that time-span the police saw the suspects enter six different stores and act in a manner consistent with individuals stealing items from the stores; after seeing the suspects leave the second store, the police determined that an attempted theft, in fact, had been committed by one of the suspects at the

7

second store; there was then a 28 minute time gap for which the suspects' whereabouts could not be accounted and the police knew the suspects had been inside the car during the 28 minute time period; after the 28 minute time gap, the officers saw the suspects enter and exit four additional stores in the same manner in which the suspects entered the two earlier stores. Id. at 201.

According to the Court, "[i]n light of this pattern of activity the police could have justifiably deemed it probable that when [the suspects] went back to the car after having been seen entering [the first two stores], they had stolen merchandise with them . . .[and] [a]ny merchandise they had stolen from [the first] store, and any merchandise they might have stolen from stores entered into as part of their spree before the police spotted them, or during the [28 minute] lapse in surveillance, would almost surely have been deposited in the automobile before [the suspects] parked the car . . . to continue their criminal activity." Id. The Court therefore concluded, "given the pattern of crimes that the defendants were engaged in, and the police's observation that the defendants had used the car during the crime spree, . . . there was a 'fair probability' that shoplifted goods, or evidence of shoplifting, were in the car at the time of the search." Id. at 201.

The facts of the instant case are so far removed from the facts of either Wider or Caroline that reasoning in both cases refute, instead of support, the Government's argument. In both Caroline and Wider, the search was conducted to find fruits or instrumentalities of a crime for which the suspects had been arrested *minutes earlier*. In the instant case, however, the search was conducted to find fruits or instrumentalities of an alleged crime that occurred *nearly a month* earlier.

In United States v. Collins, 439 F.2d 610 (D.C. Cir. 1971), the perpetrator of a robbery

was observed leaving the scene car. The victim was able to provide the police with the color, make, model and license number of the car. Id. at 613.  Just six days later, the police located the car and placed it under surveillance. Id. The police saw three people walk up to the car and get inside. The police approached the car and, as they did so, saw the driver place an object on the floor of the car. The police removed the driver from the car and retrieved the object (a small change purse). Inside the purse, the police found narcotics.  The driver was then placed under arrest for narcotics violations. Id.

  As in the instant case, the Government attempted to sustain the search of the car on the ground that "because there unequivocally existed a reasonable basis for a belief that the observed car had been used in the hold up, the vehicle could justifiably be searched for fruits or instrumentalities of the crime."  Id. at 615. The Court, however, flatly rejected the Government's argument. The Court held that a time gap of only *six days* between the time of the alleged criminal conduct and the search of the car "dissipate[d] the reasonableness of the expectation that the fruits or instrumentalities of the crime would be in the car . . ." Id. at 616; therefore, the police did not have probable cause to search the car without a warrant. Id.

  The Government has not, because it cannot, cite a single case in which any court has upheld either a seizure or search with such a time-gap.

  Furthermore, in both Caroline and Wider the search was conducted to find fruits or instrumentalities of *the crime for which the suspects had been arrested*. In the instant case, however, the search was conducted to find fruits or instrumentalities of a suspected crime completely separate and apart from the crime for which Mr. Dubose had been arrested. The Government has cited any case with fact similar to facts of the instant case.

**3. The seizure of the Lexus cannot be upheld on civil forfeiture grounds.**

The Government's civil forfeiture argument is not only without merit but ignores the facts found at the hearing in this case. Citing, <u>Florida v. White</u>, 526 U.S. 559 (1999), the Government asserts "[e]ven if the facts described above did not amount to probable cause to search the vehicle, there was certainly a basis to seize the vehicle for civil forfeiture and or further investigation." <u>Govt. Supplemental Response to Defense Motion to Suppress Physical Evidence</u>, at p. 5. The Government correctly notes that seizure on forfeiture grounds is proper only when the police have probable cause that a "vehicle or vessel, which [is] used, or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of [controlled substances]." D.C. Code Ann. § 48-905.02(a)(4). <u>See</u> <u>also</u>, 21 U.S.C. § 881(a)(4), (b)(4). In the instant case, the Government has not adduced sufficient evidence, and certainly not probable cause to believe, that the Lexus was used to transport or facilitate the transportation of narcotics. Indeed the Government has not adduced any evidence that the Lexus was used to transport or facilitate the transportation of narcotics. More important, when asked at the hearing in this case why the car had been seized, Officer Reginald Jones, the only officer to testify on this issue responded, "I know it was for evidence." Tr. at 52. When the Court asked Officer Jones to clarify his comments, Officer Jones responded, "prior to [the dogs detecting the narcotics,][the car] was held for evidence." Tr. at 53.

The Government called two officers at the evidentiary hearing in this case, Officer Ramey and Officer Jones. Neither officer participated in or observed the August 11, 2005, narcotics sale. According to Officer Jones, however, he was told by another officer that an undercover officer met with a seller (not Mr. Dubose) to discuss the purchase. At some point, the seller got in to the

Lexus and came back to the undercover officer. There was no evidence as to why the seller entered the Lexus, and certainly no evidence that the seller retrieved narcotics from the Lexus. Indeed, there was no evidence elicited a the hearing that the seller was using the car to transport narcotics. If the police actually believed that the car was being used to transport narcotics, they could have attempted to obtain a forfeiture warrant on August 11th or any day thereafter. No such warrant was ever sought by the police.

Finally, and most importantly, the Government has not cited any support (because there is none) for the proposition that the police can enter **private property** to seize an item for civil forfeiture. Compare, Florida v. White, 526 U.S. 559 (1999)(seizure pursuant to civil forfeiture statute upheld because the seizure took place on a public street) and Coolidge v. New Hampshire, 403 U.S. 443 (1971)(warrant is required to seize items from private property absent exigent circumstances). The evidence in this case is unequivocally clear: when the police seized the Lexus, the Lexus was parked on private property**:** "When [the undercover] officer came to the scene, the officer came over, looked into the yard area where the vehicle was parked." Tr. at 38. "So I asked him did he know who the owner of the vehicle that was that was parked in the yard?" Tr. at 39. Q: [T]he yard area of the 600 block of Emerson Street, correct? That's where the car was? A: That's correct." Tr. at 48.

In Florida v. White, 526 U.S. 559 (1999) the Court was asked to decide if "the Fourth Amendment requires the police to obtain a warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband." White at 560. The Court noted the "well established distinction between seizures in an open area and such a seizure on private premises." Id. at 566; See also, Payton v. New York, 445 U.S. 573, 587 (1980)

(discussing the difference in seizures on private property as opposed to public property) Observing that "[o]ur Fourth Amendment jurisprudence has consistently accorded law enforcement officers greater latitude in exercising their duties in public places," the Court concluded that the Fourth Amendment did not require the police to obtain a warrant to seize the defendant's car because the car was "seized from a public space" and the warrantless seizure "did not involve any invasion of [the defendant's] privacy. Id. at 565-566 .

Seizures on private property, however, are not governed by Florida v. White, but rather by Coolidge v. New Hampshire, 403 U.S. 443 (1971).  In Coolidge, the police seized the defendant's car at his house pursuant to a warrant that was issued by the Attorney General. After holding that the warrant was invalid for violating the neutral and detached magistrate requirement, the Court then discussed whether the now warrantless seizure was nonetheless lawful.

To support its position that the seizure was lawful, the government argued that under Carroll v. U.S., 267 U.S. 132 (1925) and Chambers v. Maroney, 399 U.S. 42 (1970), no warrant was required to seize and search the automobile so long as there was probable cause to justify the search.  The Court rejected the government's argument and drew a bright-line distinction between seizures and searches on public highways and seizures and searches in private driveways:

> The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears.  And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States--no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized autobile (sic). In short, by no possible stretch of the legal

> imagination can this be made into a case where 'it is not practicable to secure a warrant,' Carroll, supra, at 153, 45 S.Ct., at 285, and the 'automobile exception,' despite its label, is simply irrelevant. Coolidge at 461-62.

The Lexus in the instant case was seized by the police while parked on private property. Therefore, because the Lexus on private premises, not a public street, a warrant was required to seize the automobile lawfully.

Moreover, as noted above, securing a warrant in the instant case would not have caused any hardship on the police. The Lexus was seized several hours after the Defendant's arrest. Tr. at 49. There was no alerted criminal bent on flight. No fleeting opportunity on an open highway after a hazardous chase. No visible contraband or weapons. No confederates waiting to move the car. In short, there is nothing in the record to suggest it was "not practiable to secure a warrant." As in Coolidge, none of the factors that made the Carroll rule reasonable are present in the instant case, and as such a warrant was required. Because the Lexus was searched incident to this unlawful seizure, all fruits of that illegal seizure and search must be suppressed.

4. **The police were not justified in towing the Lexus for lack of registration**

Lastly, the Government's reliance on D.C. Code Ann. § 50-1501.04 is factually inaccurate. Seizure under this provision of the D.C. Code is only authorized when the unregistered vehicle is found to be "opertat[ing]" on "any public highway of the District of Columbia" Id. As stated above the Lexus was not parked on a "public highway of the District of Columbia." Because a private backyard is outside the scope of D.C. Code § 50-1501.04, there was no lawful basis upon which to seizure the Lexus and the evidence subsequently recovered from the Lexus must be suppressed.

13

WHEREFORE, for the foregoing reasons, and for any which may become apparent at a hearing on this motion, it is urged that this Court grant this Motion to Suppress.

                Respectfully submitted,

                A.J. KRAMER
                Federal Public Defender

                /s/

                DAVID W. BOS.
                Assistant Federal Public Defender
                625 Indiana Avenue, N.W., Suite 550
                Washington, DC  20004
                (202) 208-7500

**CERTIFICATE OF SERVICE**

I, David W. Bos., Assistant Federal Public Defender, hereby certify that a copy of the motion has been served upon Wanda Dixon, Esquire, Assistant United States Attorney.

                /s/

                DAVID W. BOS
                Assistant Federal Public Defender

**DATE:**