UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | |
| v. | : | Cr. No. 05-372 (JDB) |
| EDDIE DUBOSE, | : | |
| Defendant. | : | |

### DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW

The Defendant, Eddie Dubose, through undersigned counsel, hereby submits the following response to the Court's Order directing the Defendant to address a) whether defendant is required to have a reasonable expectation of privacy in the property upon which the vehicle was parked in order to challenge the warrantless search and seizure of that vehicle, and (b) whether the record reflects that defendant in fact had such a reasonable expectation of privacy at the time of the search and seizure.[1]

**1. Whether defendant is required to have a reasonable expectation of privacy in the property upon which the vehicle was parked in order to challenge the warrantless search and seizure of that vehicle**

The short answer to the Court's question is yes, and there is ample evidence that Mr. Dubose had a reasonable expectation of privacy in this case and may challenge the warrantless search and seizure of the Lexus.

"[T]he Fourth Amendment protects people, not places," Katz v. United States, 389 U.S.

---

[1] Although the Court asked counsel to address only the issues listed in its Order, to insure the Defendant's rights are fully protected, counsel urges the Court to review United States v. McCormick, 502 F.2d 281 (9th Cir. 1974) in response to other issues raised in the Government's March 31, 2006 pleading.

347, 351, (1967), and provides sanctuary for citizens wherever they have a legitimate expectation of privacy. Id., at 359. Since the Supreme Court's decision in Katz it has been the law that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, (1978).  A subjective expectation of privacy is legitimate if it is " 'one that society is prepared to recognize as "reasonable." Id. at 143-144, n. 12, quoting Katz, at 361 (Harlan, J., concurring).

A person may have a legally sufficient privacy interest in a place "other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." Minnesota v. Olson, 495 U.S. 91, 98 (1990) citing Rakas v. Illinois, 439 U.S. 128 (1978).[2] See also, Minnesota v. Carter, 525 U.S. 83, 88 (1998)("a person may have a legitimate expectation of privacy in the house of someone else"); United States v. Thomas, 372 F.3d 1173 (10th Cir. 2004)(defendant as social guest had legitimate expectation of privacy in apartment leased by another); United States v. Pollard, 215 F.3d 643 (6th Cir. 2000)(same).   As the Supreme Court observed in Minnesota v. Olson:

> That the guest has a host who has ultimate control of the house is not inconsistent with the guest having a legitimate expectation of privacy. The houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest. . .

---

[2]  This protection includes not only homes but property "immediately surrounding and associated with" the home. Hester v. United States, 265 U.S. 57 (1924). See also, Wattenberg v. United States, 388 F.2d 853, 857 (9th Cir. 1968)("appropriate test in determining if a search and seizure adjacent to a house is constitutionally forbidden is whether it constitutes an intrusion upon what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public"). The protection does not necessarily extend to "property used for commercial purposes," where the "expectation of privacy is "different from, and indeed less than, a similar expectation in an individual's home" Minnesota v. Carter, 525 U.S. 83, 90 (1998), citing, New York v. Burger, 482 U.S. 691 (1987), but it does include certain areas at an individual's workplace. O'Connor v. Ortega, 480 U.S. 709 (1987).

> The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household. If the untrammeled power to admit and exclude were essential to Fourth Amendment protection, an adult daughter temporarily living in the home of her parents would have no legitimate expectation of privacy because her right to admit or exclude would be subject to her parents' veto. . . From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he ***and his possessions*** will not be disturbed by anyone but his host and those his host allows inside. [Therefore] [b]ecause respondent's expectation of privacy in the [] home was rooted in "understandings that are recognized and permitted by society," Rakas, at 144, it was legitimate, and respondent can claim the protection of the Fourth Amendment.

(Emphasis added)

Contrary to the Government's contention, United States v. Mendoza, 438 F.3d 792 (7th Cir. 2006) sheds no light on the issues presented in this case. In Mendoza, the 7th Circuit was presented with an *evidentiary issue* of whether or not the defendant had demonstrated that he had a "privacy interest" in a garage located on property where the defendant was arrested. Citing the long established legal framework articulated in Katz, the 7th Circuit noted that "[a] reasonable expectation of privacy is infringed when (1) the defendant exhibits an actual or subjective expectation of privacy and (2) the expectation is one that society is prepared to recognize as reasonable." Id. at 795. The Court found that there was no evidence that Mendoza had *any* connection to either the house or the garage where the automobile containing the narcotics was found, other than Mendoza being found at the house at the time the police knocked on the door. Nor, the Court found, did Mendoza *assert* that he had either an actual or subjective expectation of privacy in either the home or the garage. Id. at 796. The Court noted that "the only evidence in the record even referencing Mendoza's residency is a Housing Identification card from Pasco, Washington and the Delaware license plate on [a car Mendoza acknowledged buying with drug proceeds]. Id. at 795 (the property on which Mendoza was found was in Indiana). Although there

was evidence that the car containing the narcotics was registered to Mendoza, there was **no** evidence that Mendoza resided at the home, was a guest at the home, or even *knew* anyone who lived or stayed at the residence. Analytically, with regards to Mendoza's subjective "expectation of privacy," the evidence elicited at the suppression hearing was consistent with the car having been found on a public street. The 7th Circuit therefore concluded that "[w]ithout some factual finding establishing that Mendoza had an actual or subjective expectation of privacy, . . . there [was] no Fourth Amendment violation." Id. at 795.³

**2. The record reflects  Mr. Dubose in fact had such a reasonable expectation of privacy at the time of the search and seizure.**

The record in this case clearly demonstrates that Mr. Dubose had both an actual and subjective "expectation of privacy" in the backyard of 631 Emerson Street, N.W.  According to the evidence elicited at the hearing, when the officer's first observed Mr. Dubose he was inside the Lexus. Tr. at 5. The Lexus was parked in backyard of 631 Emerson, Street, N.W.  "When [the undercover] officer came to the scene, the officer came over, looked into the yard area where the vehicle was parked." Tr. at 38. "So I asked him did he know who the owner of the vehicle that was that was parked in the yard?" Tr. at 39. Q: [T]he yard area of the 600 block of Emerson Street, correct? That's where the car was? A: That's correct." Tr. at 48.

Most important, unlike the defendant in Mendoza, there is un-controverted evidence connecting Mr. Dubose to the residence other than his mere presence there when the police arrived. Officer Jones testified that before the car was towed, he encountered the defendant's brother and the following exchange occurred:

---

³Although the 7th Circuit opined that defendants should either testify or submit an affidavit to support an assertion of a  privacy interest, neither this Circuit nor the Supreme Court has ever imposed such a requirement. See, Minnesota v. Olson, 495 U.S. 91 (1990).

> While I was in the alleyway watching the vehicle, a gentleman pulled up . . and I asked him who **he was and he said his mother lived there**. . . I asked him, you know – like I said, he said his mother lived here. **So I asked him did he know who the owner of the vehicle was that was parked in the yard, and said, 'yeah, my brother Eddie**.' Tr. at 39. (Emphasis added).

The facts of this case, therefore, are substantially different from the facts in <u>Mendoza</u>. In <u>Mendoza</u>, there was no evidence regarding Mendoza's connection to the home or area searched by the police. There was no evidence that Mendoza even knew the legal occupants of the residence. There was no evidence that Mendoza had *any* relationship with the legal occupant of the resident. Certainly there was no evidence that Mendoza was a related to the legal occupant of the resident. Here, in contrast, the evidence has established that Mr. Dubose had a very close connection to 631 Emerson Street, N.W. Indeed, Mr. Dubose' connection to 631 Emerson Street is far stronger than the defendant's connection to the residence in <u>Minnesota v. Olson</u>. The evidence at the hearing established that Mr. Dubose not only knew the occupant of 631 Emerson Street, the occupant was *a relative* of Mr. Dubose. And the occupant was not a distant relative, but instead Mr. Dubose' *mother*. It cannot be seriously disputed that Mr. Dubose (or any son) had a "subjective expectation of privacy" in his mother's home (to remove any doubt on this issue, see Exhibit A).[4] Because that "expectation of privacy" is "rooted in understandings that are recognized and permitted by society . . . it [is] legitimate and [Mr. Dubose] can claim the protection of the Fourth Amendment." <u>Olson</u>, at 99, citing <u>Rakas</u> at 144, n. 12.

---

[4] To the extent the Court believes the factual record is incomplete on this issue, the Defendant seeks leave of the Court to supplement the record. Counsel notes that the issues presented in the Court's Order were not issues the Court asked the Government to address when it asked the Government to submit its pleading on March 31, 2006: "I'm not looking for any additional briefing. I don't think you have a right to additional briefing given what I have set out in terms of the briefs from the parties. So I just want notification as to whether you're continuing to rely on those two arguments . . . If it requires a sentence or two of explanation in a written notice, then I'll grant you that. You can do that, but I don't want an additional brief in this case. I don't think you are entitled to that." Tr. at 17 (March 29, 2006, status hearing).

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

/s/

DAVID W. BOS.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500

**CERTIFICATE OF SERVICE**

I, David W. Bos., Assistant Federal Public Defender, hereby certify that a copy of the motion has been served upon Wanda Dixon, Esquire, Assistant United States Attorney.

/s/

DAVID W. BOS
Assistant Federal Public Defender

**DATE:**