**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | :     **Criminal No.: 05-372 (JDB)** |
| | : |
| **EDDIE DUBOSE,** | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S MOTION FOR RECONSIDERATION**
**OF THE COURT'S ORDER GRANTING IN PART**
**DEFENSE MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States, by and through its attorney, Kenneth L. Wainstein, the United States

Attorney for the District of Columbia, respectfully requests that the Court reconsider its order of

April 19, 2006, granting defendant's motion to suppress physical evidence found inside of the

vehicle.   In support of this pleading, the government relies on the following facts, points and

authorities, and such other facts, points and authorities as may be cited at a hearing on this

matter.

**The factual background and procedural history.**

The factual background of this case has been set forth in earlier pleadings, and will not be

repeated here.[1]   Although we recognize that these proceedings have been protracted, involving

numerous hearings and submissions by the parties, the government (nor the defense) has not

purposefully endeavored to delay a resolution in this case, and the government (indeed, both

parties) has at all times attempted to lay out the appropriate arguments and responses as they

have become clear.   Nevertheless, in view of the importance of this case, as reflected particularly

in the community concerns expressed in the e-mail tip that prompted this police investigation, we

---

[1] We would like to point out one issue for clarification.   The officer's testimony in the
record is misleading on this point.   The email complaint that started this investigation was not
authored by the ANC commissioner as indicated in the Memorandum Opinion.   Memorandum
Opinion at 1.   The email  was a citizen complaint that the commissioner forwarded to the police
with additional remarks.

respectfully request that the Court reconsider its order granting in part the defendant Dubose's motion to suppress evidence.

**The government requests that the Court reconsider its finding that the defendant had an expectation of privacy in the property where the Lexus was found.**

In the Memorandum Opinion, the Court found that the defendant successfully demonstrated that he has a subjective expectation of privacy in his mother's backyard where his car was parked. However, the government's position is that under the facts of this case, the defendant's expectation is not an objective one as established by the case law. See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In order for a person who is not a resident of the address to show standing, he must show that he is a social guest. See Minnesota v. Olson, 495 U.S. 91 (1990). Consequently, it is legally significant that the defendant does not establish sufficient facts in the record to demonstrate his presence at the residence as a social guest on this occasion. The defendant has not alleged that he was there to visit his mother on this occasion or that he had left any personal items at the address on this occasion. In his Supplemental Memorandum of Law, the defendant filed an affidavit with the Court stating that the house at 631 Emerson belonged to his mother. He acknowledged that he did not live there, and had not lived there since he was a child. Although he stated that he visited regularly, and had left personal items there numerous times, defendant Dubose did not state that he had a key to the residence, that he was at his mother's house with permission on this occasion, or that he had her permission to park his car in her yard on this or, indeed, on any other occasion. In the affidavit, the defendant did not claim that he was a social guest on this occasion, that his mother knew that he was there, or that he even saw his mother on this occasion. The affidavit does not state that the defendant was or has been an overnight guest in the residence on this or any other occasion since he moved out.

Although (as noted) the affidavit does state that the defendant visits regularly, it does not state how he traveled to his mother's house on this occasion (or any other) – whether by foot, by

2

car, by public transportation, or otherwise.[2]   It also does not state that he drove the car to his mother's house on this occasion, or that he parked the car in the front or back yard on this or any other occasion.  Moreover, the affidavit does not state that the car in question in this case belongs to the defendant, nor does he claim an expectation of privacy therein.  The affidavit states that the defendant believed that any belongings he left at his mother's residence, including the backyard, would go undisturbed by any person other than his mother.  While this may establish that he has a subjective expectation of privacy in the residence, his belief is insufficient to establish an objective expectation of privacy in the residence, or, more specifically, the backyard parking area.   Indeed, nowhere does he claim the green Lexus as one of his belongings.   He does not even admit to driving the green Lexus to his mother's residence, or having any personal items in the yard on this or any other occasion.

In its response to the defendant's submission, the government requested that the Court decline to accept the defendant's affidavit regarding this matter, and that if the affidavit were to be  accepted, that the government be permitted to rebut the allegations therein, or at least to cross examine the defendant regarding his allegations.  On April 14, 2006, the Court directed that the government would only be permitted to have " very brief, controlled cross-examination of defendant on his affidavit at the Status Conference."  See Court's Minute Order dated April 14, 2006.  The government declined to cross-examine the defendant under those circumstances, because in view of the omissions previously raised by the government,  the affidavit of the defendant did not include sufficient information to give rise to a valid, objective expectation of privacy in the backyard of 631 Emerson Street, NW.  However, if the government is permitted to rebut the defendant's allegations,  the government can show that the defendant was not a social guest in his mother's home, nor was he a resident thereof, nor was he visiting her on this occasion.[3]  In fact, defendant's mother did not know that he had ever parked his car on her

---

[2] However, we do have the defendant's statement to the police that he arrived at the location by bus.  Tr. at 7.

[3] At the conclusion of the motions hearing held on February 24, 2005, the Court indicated to the parties that while it would hear additional legal argument, that the factual record was closed in this case.  Tr. at 75.   However, over the government's objection, the Court subsequently accepted an affidavit from the defendant which contained his factual basis for his

property until she was told by others.  Affidavit of Officer Reginald Jones attached as
Government's Exhibit 1, and redacted grand jury transcript of L'ynda Dubose, attached as
Government's Exhibit 2.[4]  Moreover, defendant's mother was visibly upset when she learned
this, because she had not seen her son for some time before this event, did not see him on this
day, and did not understand how he could come to the area, park in her yard, and not pay her a
visit.  Id.

     A person who is simply a guest on the premises, without more,  does not have a
reasonable expectation of privacy in the place where he is a guest.  See United States v.
Robinson, 698 F.2d 448 (D.C.Cir. 1983).  See also United States v. Hicks, 978 F.2d 722
(D.C.Cir. 1992); and  Lewis v. United States, 594 A.2d 542 (D.C. 1991).   The Supreme Court
has held that a person who is an overnight guest in a home has a reasonable, objective
expectation of privacy in the host's residence, relying in part on the fact that overnight stays
usually involve sleep, the inherent vulnerability of those who are sleeping, and the concomitant
expectation that the place where sleep occurs will be private.  See Minnesota v. Olson, 495 U.S.
91, 98, 1689 (1990).  By contrast, a person who has permission to be in his host's home for a
short time, solely  for the purpose of packaging illegal drugs, has no expectation of privacy
therein.  See Minnesota v. Carter, 525 U.S. 83 (1998).  Here, the record is silent regarding any
purpose for the defendant's arrival at 631 Emerson Street on this occasion.  In fact, all we have
on that issue are defendant's own statements to the officers that he did not live in the area, and
that  he had arrived there by bus, and that he had just arrived there when the officers saw him.
Tr. at 7.

     In the Memorandum Opinion, the Court found that the defendant had a valid expectation
of privacy in his mother's yard (where the Lexus was parked) based largely on the existence of a
familial relationship between the defendant and his mother, and the fact that the defendant
regularly parks his vehicle in the backyard during his family visits, believing that it will be safe

---

assertions regarding his expectation of privacy.  The government requests that the Court also
accept as evidence its attached affidavit and redacted grand jury transcript to supplement the
record on this important point.

     [4] Chief Judge Hogan has authorized the disclosure of information obtained during the
grand jury investigation for purposes of this proceeding.

from intrusion.  See Memorandum Opinion at 15, note 6.  As previously noted, the defendant's affidavit is silent regarding how he arrives at the residence, whether he usually arrives by vehicle, and where he parks his car, if and when he does drive there.  Moreover, the case law expressly notes that "a familial relationship to the person to whom the residence belonged, standing alone, would not be sufficient to find that the invitee had standing."  See Morton v. United States, 734 A.2d 178, 187 (D.C. 1999)(Kern, Senior Judge, dissenting), (citing New York v. Ponder, 429 N.E.2d 735, 736-737 (N.Y. 1981).  In New York v. Ponder,  the court found that the defendant did not have an expectation of privacy in the home of his grandmother, despite the fact that the defendant was one of 30 grandchildren who visited her and occasionally stayed the night.  New York v. Ponder, 429 N.E.2d 735 (N.Y. 1981).  See also State v. Francisco, 26 P.3d 1008 (Wash. App. Div. 1  2001)(defendant lacked standing to protest claimed illegal search in his mother's home, despite the fact that he was a welcome visitor in her home, intermittently stayed there overnight, and did laundry and stored clothes there), and State v. Putman, 810 P. 2d 977 (Wash. App. Div. 2 1991)(defendant had no expectation of privacy in his father's yard where murder weapon was discovered).

In the Memorandum of Law, the Court stated that the defendant regularly parks his vehicle on his mother's property during his family visits.  See Memorandum of Law, page 15, note 6.  However the defendant has not alleged these facts in his affidavit.  The defendant's affidavit does not state that the defendant regularly, frequently, or ever drives to the property when he visits his mother, nor does the affidavit establish that the defendant parks his car on his mother's property, if and when he does drive there.  The affidavit also does not  state that the defendant owns or possesses or drives this or any other vehicle when he visits.  The affidavit does not even state that the defendant drove to the property on this occasion.[5]  What the record does show is that the police saw the defendant getting out of a car in the back of 631 Emerson Street. Tr. at 5.   When he got out of the car, he walked away from the house and not into it.  Tr. at 5-6.  When he was questioned by police, he stated that he lived elsewhere, had taken the bus, and had just arrived in the area.  Tr. at 7.  It may be that we can infer from the defendant's

---

[5] Here, the officers did not see defendant drive to the residence–they only saw him getting out of the vehicle.  Tr. at 5.

affidavit that he may have had a legitimate reason for being on the premises. However, as the Supreme Court has noted, "legitimate presence on the premises is [not] irrelevant to one's expectation of privacy, but it cannot be deemed controlling." United States v. Salvucci, 448 U.S. 83, 91 (1980) citing Rakas v. Illinois, 439 U.S. 128, 147-148 (1978).

Moreover, in the cases relied on by the defendant and cited by the Court in the Memorandum Opinion, the non-resident defendants who were found to have a legitimate expectation of privacy in premises were actually, physically present on the premises at the time of the search or seizure in question. In Minnesota v. Olsen, the defendant was on the scene at the time that the police removed him from the residence, and the Supreme Court based its holding on the fact that the defendant was an overnight guest. Minnesota v. Olsen, 495 U.S.91 (1990). In Morton v. United States, the defendant had run into a residence that was not his own, and was apprehended by the police while inside the residence. The court found that he had a protected privacy interest in the residence based on the testimony at the motions hearing of a person who lived there who stated that the defendant was a guest–a frequent visitor who was "like family." Morton v. United States, 734 A.2d 178, 182 (D.C. 1999). In Bonner v. Anderson, which was actually a civil rights action against a police officer where the court found that the plaintiff had a protected privacy interest, the plaintiff was on the scene at the time of the alleged Fourth Amendment violation. Bonner v. Anderson, 81 F.3d 472 (4th Cir. 1995). In State v. Trecroci, defendants were residents and a social guest who were present on the scene at the time of the alleged Fourth Amendment violation. State v. Trecroci, 630 N.W.2d 555 (Wis. App., 2001). In re Welfare of B.R.K. involved a juvenile respondent who was on the scene of the premises at the time of the alleged violation. In re Welfare of B.R.K., 658 N.W.2d 565 (Minn. 2003). In United States v. Thomas, where defendant testified that he had planned to spend the night at the home of his aunt and uncle, and that his plans were "okay" with them, the court found that he had a privacy interest where the defendant was present on the scene when the police ordered the occupants of the residence to come out. United States v. Thomas, 372 F.3d 1173 (10th Cir., 2004). In United States v. Pollard, the court found that defendant Pollard had an expectation of privacy in the residence wherein he was present during the police intrusion. United States v. Pollard, 215 F.3d 643 (6th Cir. 2000). In all of these cases, when courts have found that a non-resident has a valid expectation of privacy in an area, courts have found that the

defendants actually were social guests–present on the scene at the time of the claimed violation. See, e.g., State v. Francisco, 26 P.3d at 1012. Here, defendant was not a social guest visiting his mother and was not on the scene at the time that the police made the seizure of which he complains – in fact, he had walked away from the scene before the seizure took place. Consequently, there is no evidence that he has a reasonable expectation of privacy in the backyard of 631 Emerson Street.[6]

**The government requests that the Court reconsider its finding that the plain view doctrine does not apply to this case.**

Because the defendant has no standing to challenge police entry on his mother's property to seize the car, the grounds for seizing the car become relevant. In the Memorandum Opinion, the Court states that the government contends that the vehicle could have been searched and seized based on the plain view doctrine. See Memorandum Opinion at 15. This is statement of the government's position is correct in part. Regarding the application of the plain view doctrine, this case is somewhat unusual in that, here, the seizure proceeds the search. Here, there was no search for evidence because the evidence (the car that had been used in a prior drug transaction) was in plain view. We have argued that the evidence, which was in plain view, was properly seized. After the evidence was seized by the police, it was then taken to the police station. A subsequent search yielded additional evidence – drugs, weapon, and related paraphernalia. The defendant concedes that the subsequent search of the evidence (the car) which yielded the additional evidence (the drugs, gun, and paraphernalia) was not illegal – it was based on probable cause as provided by the narcotics dog's alert. Tr. at 66-67. However, it is the seizure of the vehicle that is the subject of the defense complaint. Tr. at 67. The government contends that the seizure in this case is legal, based on the plain view doctrine. Moreover, the fact that the car is

---

[6] We do not mean to suggest that a legitimate social guest, visiting family or friends for the night, or for a weekend, must be present at the time of the search in order to have standing; rather, we contend only that the defendant's absence from the scene (other than perhaps having parked his car in the backyard without his mother's knowledge), and his lack of any contact with his mother on this occasion, indicates that he in fact was not a true social guest of his mother (at least on this occasion).

readily mobile and could be moved before the police could act to seize it provides an exigency that would also justify its seizure without a warrant. See Schmerber v. California, 384 U.S. 757, 770-771 (1966), and Florida v. White, 526 U.S. 559, 564-565 (1999).[7]

As set out in the Memorandum Opinion, the plain view doctrine can operate to sustain a warrantless seizure when certain elements are present. The Court agreed with the government's contention that the first two prongs of the test have been met, in that the officers had a right to be on a public street where they were responding to a complaint, and the vehicle was in plain sight. Memorandum Opinion at 15-16.[8] However, the Court found that the vehicle had no readily identifiable nexus to crime, because 1) no one saw what happened inside the vehicle during the undercover operation; and 2) the vehicle's nexus to crime was not readily apparent to Officer Jones. Memorandum Opinion at 16. The government requests that the Court reconsider both of these conclusions.

The government notes that no one saw what happened inside the vehicle during the undercover operation due to the vehicle's heavily tinted windows. However, it is the involvement of the vehicle in the crime that makes it evidence in the investigation and prosecution of the crime – the fact that, here, the vehicle was clearly used as an instrumentality in a drug sale. It is clear that the presence of the vehicle was necessary to make the drug sale succeed – without the vehicle, and whatever occurred inside, it is apparent that the drug sale could not have been completed. Officer Jones testified that on August 11, 2005, approximately one month prior to the stop of Mr. Dubose, an undercover officer was involved in an operation in the same area. Tr. at 33-34, 37. A person who was with the undercover officer took the officer

---

[7] Here, while the record is clear that the defendant possessed a key to the vehicle, there is no indication that the key in the defendant's possession was the only key to the vehicle. Consequently, despite the fact that the police were attempting to hold the defendant in custody (even though he had nearly escaped from them twice), the police could not be certain that the car would remain where it was during the amount of time that it would take for them to apply for and receive a warrant. Someone else with a key could have moved the car during the interim, or the homeowner in the place where the car was parked could have had the car towed from the premises.

[8] Moreover, as we have argued, the defendant has no standing to challenge police entry on his mother's property to seize the car.

to an area, and the undercover officer saw the person get into the passenger side of the green Lexus. Tr. at 34-35. When the person emerged from the green Lexus, he gave the undercover officer some crack cocaine. Tr. at 35-36. The officers on the arrest team tried to stop the Lexus at that time, but it sped away. Tr. at 36. Based on these facts, it is clear that the Lexus was instrumental in the completion of the drug sale, since it stands to reason that if the person had the means to complete the drug sale without the Lexus, he would have done so without getting in and out of the Lexus first.[9]

That the Lexus is involved in the earlier drug sale is a reasonable inference based on the sequence of events as illustrated, and it matters not that the action inside the Lexus was not visible to the officer. It is clear that the Lexus was used to bring the drugs to the scene, or alternatively that the Lexus was used to bring the person with the drugs to the scene, or that the Lexus contained the person with authority to authorize the sale. Regardless of the scenario, the Lexus was clearly used to facilitate the drug sale or as an instrumentality of the drug sale, and as such, it is subject to seizure as evidence thereof. The officers have the right, and even the duty, to continue the investigation into the sale of drugs on the earlier occasion. Had the officers stopped the vehicle on the earlier occasion, the stop itself would be based on probable cause to believe that its occupants were involved in a drug transaction. The investigation could reasonably encompass an attempt to interview the occupants of the vehicle. If an occupant of the vehicle were subsequently charged in the distribution or conspiracy to distribute such drugs, the existence of the car (as well as its discovery in the same neighborhood as the earlier transaction) would be substantive evidence available to the investigation or prosecution to corroborate the observations of the undercover officer and the arrest team. The fact that the occupant of a vehicle so used was the subject of a subsequent drug related complaint a month later would be relevant evidence to the investigation into the first drug transaction. Consequently, based on the

---

[9] The government submits to the Court that street level drug sales are inherently dangerous clandestine transactions. There is always the potential for discovery by police, concerned or even unwary citizens, or interruption from those who seek to rob the participants of their drugs or their money. Consequently the participants seek to conclude these types of transactions as quickly as possible. As such, it is extremely unlikely that they will spend precious time with activities such as getting in and out of cars during the transactions unless the involvement with the car is vital to the completion of the transaction.

evidence adduced at the motions hearing, this vehicle has a strong nexus to the crime of drug distribution on the earlier date, and as such, it is evidence of the earlier drug distribution.

Moreover, the car's nexus to the August 11 crime should also be considered in light of all of the information the officers knew about the Lexus, including the information learned on the day of the defendant's arrest. The record established that, on that day, the police were investigating information that a person named Eddie Dubose was a drug dealer in the 600 block of Emerson Street. Tr. at 4. The police had just seen the defendant get out of the green Lexus in the 600 block of Emerson Street. Tr. at 5. The police learned that the defendant, who was the person who they had just seen get out of the green Lexus, was Eddie Dubose. Tr. at 7. The police knew that the defendant had struggled and resisted their initial attempts to place him under arrest. Tr. at 9. And finally, the police knew that the green Lexus had been involved in a drug transaction about a month earlier in the same area. Tr. at 33-34. Placing all of that information together, the police were certainly able to make a reasonable inference that the Lexus had a nexus to crime, and that, consequently, it was subject to seizure as evidence useful in the prosecution or investigation of the August 11 drug sale.[10]

The Court states in its Memorandum Opinion that it finds significant that the Lexus' nexus to crime was not readily apparent to Officer Jones. Memorandum Opinion at 16-17. The Court found that Officer Jones needed to confirm the license tag number with the undercover officer in order to make the green Lexus distinguishable to him from all other green Lexuses. Memorandum Opinion at 17. However, Officer Jones never implied that he could not distinguish this Lexus from all others without the tag number. In fact, he testified that he realized that this Lexus was the one involved in the August 11 sale as he first walked up to the car after making contact with the defendant. Tr. at 44. The Court further found that the plain view doctrine does not apply when the officer corroborates his suspicion that the evidence has a criminal nexus. Memorandum Opinion at 17. The Court stated that, for the plain view doctrine to apply, "the light bulb must illuminate instantaneously – it may not escalate from a subtle glow

---

[10] However, even if the Court finds that the vehicle is not evidence in the investigation and prosecution of the August 11, 2005, drug transaction, the government has not abandoned its previously presented argument that the car could still have been seized for forfeiture based on its use as an instrumentality and or facilitator of the drug transaction on that date. See note 11, infra.

to a more robust beacon through further investigation." Memorandum Opinion. at id. Respectfully, the government submits to the Court that law is not so restrictive. In the cases cited by the Court in its Memorandum Opinion, it is true that the Supreme Court notes that the Court requires that the incriminating nature of the item must be "immediately apparent." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); Horton v. California, 496 U.S. 128, 136-137 (1990) Texas v. Brown, 460 U.S. 730, 739 (1983). However, the Supreme Court has interpreted or explained the phrase "immediately apparent" to mean simply that before an object in plain view can lawfully be seized by the police, the incriminating nature of the item must be apparent (or "immediately apparent") to them. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); Horton v. California, 496 U.S. 128, 136-137 (1990) Texas v. Brown, 460 U.S. 730, 739 (1983). Indeed, in Texas v. Brown, the Court observed that "the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." See id. In Texas v. Brown, the officer seized a green balloon possibly connected with heroin distribution from the defendant's car after he saw the defendant let it fall from his hand to the seat. The Supreme Court rejected the lower court's belief that the officer had to be possessed of "near certainty as to the seizable nature of the items." Id. The Court noted that "a practical, nontechnical probability that incriminating evidence is involved is all that is required." Id. (citations omitted). What the Supreme Court proscribes by its use of the phrase "immediately apparent" is the actual search or seizure of the item before its incriminatory status has become clear or apparent to the officers. In Arizona v. Hicks, the Supreme Court found that no seizure occurred as a result of the officer's observation and recordation of serial numbers on stereo equipment, even though the officer's purpose was to consult and confer with other people at police headquarters for the purpose of determining whether those items were stolen and hence subject to seizure. Arizona v. Hicks, 480 U.S. 321 (1987). In other words, the police may not first seize the item on a hunch or suspicion that the item has evidentiary value, and then take the item to other officers to confirm their suspicions. The police must first be reasonably sure that the item has evidentiary significance before any seizure occurs; if they possess that reasonable certainty, they are free to act. The Supreme Court does not prohibit consultation with other law enforcement officers – before seizure – in an effort to determine whether probable cause exists to

believe that the item is an incriminating piece of evidence.

In <u>United States v. Garces</u>, police officers executing a search warrant discovered a key in the pocket of pants that belonged to the defendant.  <u>United States v. Garces</u>, 133 F.3d 70 (D.C. Cir. 1998).  There, the court rejected defendant's claim that the key did not fall under the plain view doctrine because its incriminating nature was not immediately apparent.  The court noted that "although the phrase 'immediately apparent" sounds temporal, its true meaning must be that the incriminating nature of the items must have become apparent, in the course of the search, without the benefit of information from any unlawful search or seizure."  <u>Id</u>. at 75.

In <u>United States v. Menon</u>, the court upheld the seizure of documents that were in plain view to government agents who were participating in the execution of a search warrant, despite the fact that the agent who initially seized the documents was not sure of their incriminatory nature until she picked them up and showed them to another agent.  <u>United States v. Menon</u>, 24 F.3d 550 (3rd Cir. 1994).  The items contained words that were significant to the second agent because of his prior investigation of the defendant – information that was not known to the first agent.  The <u>Menon</u> court had no problem with the fact that the first agent collaborated with the second agent, and actually picked up the files and brought them to him for his review.  Nor did the court find issue with the fact that the incriminatory nature of the documents did not become apparent until the second agent reviewed it.  The court rejected defendant's argument that the documents should be suppressed because their evidentiary nature was not immediately apparent to the first agent.  The <u>Menon</u> court noted that if the second agent had been the first one to see the documents, he would have been able to review them to make the evidentiary determination.  Consequently, the fact that he looked at them after another agent had no effect on whether their incriminatory nature was immediately apparent.  <u>Id</u> at 561.

Here, in its Memorandum Opinion, the Court stated that "Officer Jones acted upon a suspicion that the vehicle could have been connected to criminal activity, not on knowledge that it was connected to criminal activity."  Memorandum Opinion at 17.   However, Officer Jones did nothing that could be considered a search or a seizure with regard to the vehicle until he had confirmed that it had been used in the commission of a crime.  The only action that Officer Jones took was to call another officer to obtain the license tag number so that he could confirm that the vehicle before him was the same one that he suspected of being involved in the August 11 drug

sale.  He did not move the car, or do anything with it other than look at it with his eyes – to observe the parts of it that were in plain view.  When he related the tag number that was displayed on the vehicle to the undercover officer by telephone, he did not have to move or manipulate the car in order to do so.   When the undercover officer arrived on the scene to identify the car as the one that she saw on August 11, she did not have to move or manipulate the car to do so.  They each merely looked at the car, and noticed its color, make, and tag number. After confirming that the car was in fact evidence of the August 11 drug sale, they called for a tow truck and moved it.  That was the seizure in this case, and it did not occur until after the evidentiary nature of the car had been verified.  The fact that they confirmed the car's incriminatory nature before towing it away was actually good police work, not a 4th amendment violation.[11]

---

[11]    Finally, we note that on page 10, note 2, of its Opinion, the Court suggests that the government had abandoned the arguments it made in its initial round of pleadings.  Because we are concerned about the potential scope of the Court's comment, we respectfully wish to note the following.  By filing our pleading on March 31, 2006, we did not abandon our previous arguments, or at least, we certainly did not intend to do so.  We did not reiterate our previous arguments because we wanted to follow the Court's instructions regarding the length of its subsequent submissions, and did not wish to use our page allotment to reiterate previous arguments when the Court indicated that it wanted clarity on certain narrowly defined specified issues.

     For example, the government has not abandoned its argument that the search of defendant's person was valid based on his arrest for carrying a dangerous weapon.  In its subsequent submission, the government simply noted that even if the Court found that the arrest for carrying a dangerous weapon was invalid, there were still intervening events that provided a separate basis for the defendant's arrest and subsequent search incident thereto.  See Government's Additional Supplemental Response to Defendant's Motion to Suppress at 1.  The government never conceded that Christian controlled in this situation.  The government notes that the Christian case cited by the defendant was a based on  a violation of D.C. Code Ann. § 22-3214(b), now 22-4514(b) (hereinafter referred to as  PPW(b)).  The Christian court specifically interpreted that statute, and not the statute for carrying a dangerous weapon found at § 22-4504(a)(hereinafter referred to as CDW).  Here, the defendant was arrested for carrying a dangerous weapon, which was not addressed by the Court in Christian.  CDW is different from PPW(b), and each charge requires proof of different elements.  See Jury Instructions for the District of Columbia,  4.70 (B), and 4.72 (A). Consequently, an arrest under the CDW statute is not invalidated by Christian.

For these reasons, and for the reasons stated in its previous pleadings, and any other reasons as may appear to the Court, the United States respectfully requests that the Court reconsider its order granting suppression of the items found in the green Lexus.

Respectfully submitted,
KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


_____/s/_____
WANDA J. DIXON
ASSISTANT UNITED STATES ATTORNEY
555 Fourth Street, N.W.
Fourth Floor, Room 4122
Washington, D.C. 20530
(202) 514-6997