**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Cr.  No. 05-372 (JDB)** |
| | ) |
| **EDDIE DUBOSE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION FOR**
**RECONSIDERATION OF COURT'S ORDER GRANTING IN PART DEFENSE**
**MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The Defendant, Eddie Dubose, through undersigned counsel, submits the following Reply

to the Government's Motion for Reconsideration of the Court's Order Granting in Part Defense

Motion to Suppress Physical Evidence and the Court's May 25, 2006, Minute Order. For the

reasons set forth below, the Government's motion should be denied. In support of this Reply

counsel states:

**1. The seizure and search of the Lexus was not supported by probable cause**

In an attempt to circumvent the Court's implicit finding[1]  that the police did not have

---

[1]As noted on page 20 of its Memorandum Opinion, the Court never explicitly reached the
issue of whether or not the police had probable cause to seize the Lexus because the Court found
the Government "wisely abandoned [its] earlier argument that the search of the vehicle would
have been justified based on probable cause. . .". Memorandum Opinion at p. 16, n. 8; rather, the
Court found that "any nexus" between the Lexus and "crime [was] weak at best." Because the
Government has not contested the Court's ruling that the Government abandoned the argument
that the search of the vehicle would have been justified based on probable cause, see Govt. Mot.
at p. 13, n. 11, the Defendant submits that it has now been waived. However, because the Court
in its Minute Order specifically asked the Defendant to address the issue of probable cause, the
Defendant will briefly address it.

probable cause to believe that the green Lexus contained fruits or instrumentalities of any illegal

activity based on the facts known to the officers at the time the Lexus was seized, see

Memorandum Opinion at p. 15-17,  the Government argues that the seizure of the green Lexus

was legal based on the doctrine of "plain view." As discussed more fully in the following section,

the "plain view" doctrine does not apply in this case. However, because the Court asked the

Defendant to address the probable cause issue in its May 25, 2006, Minute Order, the Defendant

submits, as he has throughout these proceedings, that the police did not have probable cause to

seize the Lexus in connection with the prior drug transaction. Indeed, because the facts, as found

by the Court and therefore now controlling, do not support a finding that there was probable

cause to seize the Lexus in connection with the prior incident that occurred 30 days earlier, there

was no legal basis for the police to seize the Lexus.

      First, the Court has found, and the Government has not disputed, that there was a time

lapse of 30 days between the earlier incident and the seizure in this case. Citing United States v.

Collins, 438 F. 2d 610 (D.C. Cir. 1971), a case cited and discussed at length by the Defendant in

his March 24, 2006, pleading (and a case never refuted or addressed by the Government in its

subsequent pleadings, including the instant motion to reconsider) the Court found that "[d]espite

a more compelling set of facts,[2] Collins held that a much shorter lapse – six days – functioned to

---

[2]In Collins, the perpetrator of a robbery was observed leaving the scene car. The victim was
able to provide the police with the color, make, model and license number of the car. Id. at 613.
Just six days later, the police located the car and placed it under surveillance. Id. The car was
parked on a public street. The police saw three people walk up to the car and get inside. The
police approached the car and, as they did so, saw the driver place an object on the floor of the
car. The police removed the driver from the car and retrieved the object (a small change purse).
Inside the purse, the police found narcotics.  The driver was then placed under arrest for narcotics
violations. Id.
      As in the instant case, the Government attempted to sustain the search of the car on the

dissipate any allegedly pre-existing probable cause that would justify a vehicle search for fruits and instrumentalities of the illegal activity." <u>Memorandum Opinion</u> at p. 16, n. 8. Under <u>Collins</u> alone, the seizure cannot be upheld on the theory that there was probable cause to believe the Lexus contained the fruits or instrumentalities of illegal activity

The Court, however, has correctly noted that the facts of the instant case are even "more compelling" than the facts of <u>Collins</u>. Although the Government now claims "[i]t is clear that the Lexus was used to bring the drugs to the scene, or alternatively that the Lexus was used to bring the person with the drugs to the scene, or that the Lexus contained the person with the authority to authorize the sale," <u>see</u> <u>Govt. Mot</u>. at p. 9, the Court never made these factual findings. Indeed, the exact opposite is true.

The Court has specifically found the officers "never determined that ***any*** narcotics or drug paraphernalia were located inside the vehicle during the prior incident." <u>Memorandum Opinion</u> at p. 16. (Emphasis added). The Court has further found that while the suspect (not Mr. Dubose) "went to the vehicle and sat in the passenger seat briefly before returning and exchanging narcotics for money, nobody saw what actually happened in the vehicle – there is thus **no evidence that the narcotics came from the vehicle**." <u>Id.</u> at p. 16. The Government has not, because it cannot, contested the Court's factual findings. Thus, even without the 30 day time

---

ground that "because there unequivocally existed a reasonable basis for a belief that the observed car had been used in the hold up, the vehicle could justifiably be searched for fruits or instrumentalities of the crime." <u>Id.</u> at 615. The Court, however, flatly rejected the Government's argument. The Court held that a time gap of only ***six days*** between the time of the alleged criminal conduct and the search of the car "dissipate[d] the reasonableness of the expectation that the fruits or instrumentalities of the crime would be in the car . . ." <u>Id.</u> at 616; therefore, the police did not have probable cause to search the car without a warrant. <u>Id.</u>

lapse, the Court has found any nexus was "weak at best." Id. at 16. Based on these factual findings – both the 30 day time lapse and the events on the day of the prior incident, the police clearly did not have probable cause to seize the Lexus in connection with the prior incident that occurred 30 days earlier.

**2. Even If There Was Probable Cause To Seize The Lexus, The Police Were Not Justified In Seizing The Automobile Without A Warrant Under The Plain View Doctrine.**

Even if the Court were to conclude that the police had probable cause to seize the Lexus in connection with the prior incident that occurred 30 days earlier, an argument the Defendant submits the Government has waived, supra n.1, the seizure of the Lexus in this case cannot be upheld under the "plain view" doctrine.

Once again, citing Florida v. White, 526 U.S. 559 (1999), and again ignoring Coolidge v. New Hampshire, 403 U.S. 443 (1971),[3] and its progeny, the Government argues that "the seizure in this case is legal, based on the plain view doctrine." Govt. Mot. at p. 7. The Government's "plain view" argument, however, is precisely the same argument presented and rejected in Coolidge v. New Hampshire, 403 U.S. 443 (1971).

In Coolidge, as in the instant case, the government sought to justify the seizure of an automobile from private property because the automobile was in "plain view" and "the car itself was an instrumentality of crime." Coolidge 403 U.S. at 464. "The State's third theory in support of the warrantless seizure and search of the Pontiac car is that the car itself was an

---

[3] Despite filing **seven** substantive pleadings in this case, and being specifically admonished by the Court at the March 3, 2006, hearing for its failure to address the issue, the Government has never addressed or discussed Coolidge and the "well established distinction" noted in Florida v. White, 526 U.S. 559, 566 (1999), "between seizures occurring in an open area and such a seizure on private premises."

'instrumentality of the crime,' and as such might be seized by the police on Coolidge's property because it was in plain view." Id. The Supreme Court unequivocally rejected the Government's argument.

The Supreme Court began its analysis with an extensive review of the "plain view" doctrine:

> It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal. An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. (Citations omitted). Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in 'hot pursuit' of a fleeing suspect. Warden v. Hayden, supra; cf. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. Chimel v. California, 395 U.S., at 762--763, 89 S.Ct., at 2039--2040. Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. Citations omitted) What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification--whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused--and permits the warrantless seizure. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous--to the evidence or to the police themselves--to require them to ignore it until they have obtained a warrant particularly describing it. *The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable*

5

*cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.* (Citations omitted).

Coolidge 403 U.S. 464-483.[4]

Indeed, even *assuming* that the police had probable cause to seize the automobile, the Court nevertheless found that the 'plain view' exception to the warrant requirement was inapplicable. "Here there was probable cause, but no exigent circumstances justified the police in proceeding without a warrant." Id. at 463. The Supreme Court observed:

> It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.' . . **This Court has never permitted the legitimation of a planned warrantless seizure on plain-view grounds, and to do so here would be flatly inconsistent with the existing body of Fourth Amendment law**. A long line of cases . . . make it clear beyond doubt that the mere fact that the police have legitimately obtained a plain view of a piece of incriminating evidence is not enough to justify a warrantless seizure. . . The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property.

---

[4] Addressing precisely the same issue in more detail 20 years later, the Supreme Court ruled in Horton v. California, 496 U.S. 128, 136 (1990):

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence [pursuant to the "plain view" doctrine] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. **There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure**. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." Id., at 466, 91 S.Ct., at 2038; see also Arizona v. Hicks, 480 U.S., at 326-327, 107 S.Ct., at 1153. Thus, in Coolidge, the cars were obviously in plain view, but their probative value remained uncertain until after the interiors were swept and examined microscopically. **Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself**. Emphasis added.

Thus, the Court re-affirmed that the police must have "a lawful right of access to the object itself," which, of course, the police did not have in the instant case.

Coolidge, 403 U.S. 471-474.

The Supreme Court noted, "the determining factors are advance police knowledge of the existence and location of the evidence, police intention to seize it, and the ample opportunity for obtaining a warrant." 403 U.S. at 483. The Supreme Court therefore concluded that "since the police knew of the presence of the automobile and planned all along to seize it, there was no 'exigent circumstance' to justify their failure to obtain a warrant." 403 U.S. at 478.

With respect to the potential "exigency" put forth by the Government that "the police could not be certain that the car would remain where it was during the amount of time that it would take for them to apply for and receive a warrant," Govt. Motion to Reconsider at p. 8, n. 7 -- the exact same "exigency" put forth by the government in Coolidge -- the Supreme Court held:

> The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States--no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized autobile (sic). In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' Carroll, supra, at 153, 45 S.Ct., at 285, and the 'automobile exception,' despite its label, is simply irrelevant. Coolidge at 461-62. . .In this case, it is, of course, true that even though Coolidge was in jail, his wife was miles away in the company of two plainclothesmen, and the Coolidge property was under the guard of two other officers, the automobile was in a literal sense 'mobile.' **A person who had the keys and could slip by the guard could drive it away. We attach no constitutional significance to this sort of mobility**.

Coolidge 403 U.S. at 461.

This Court has made a factual finding, not contested by the Government, that there was no exigency present at the time the police seized the Lexus. See Memorandum Opinion at p. 20. Moreover, as noted in earlier pleadings, securing a warrant in the instant case would not have

7

caused any hardship on the police. The Lexus was seized several hours after the Defendant's arrest. Tr. at 49. During that time, the Lexus was under the constant guard of Officer Jones and other officers. "[W]e just were safeguarding the car to make sure nobody tampered with it." Tr. at 48. There was no alerted criminal bent on flight. No fleeting opportunity on an open highway after a hazardous chase. No visible contraband or weapons. No confederates waiting to move the car. In short, there is nothing in the record to suggest it was "not practicable to secure a warrant."

The Court correctly notes in its Memorandum Opinion that the issue before the Court is "not whether the police could have, consistent with the Fourth Amendment, seized and searched the green Lexus [by convincing] a neutral judicial officer to issue a warrant." Id. at p. 20. Rather, the issue presented here is whether "[u]nder the totality of the circumstances," there was some "exigency" or other justification for seizing the Lexus from private property without a warrant. "Here there was probable cause, but no exigent circumstances justified the police in proceeding without a warrant."Coolidge 403 U.S. at 463. Because there was no legally cognizable exigency to proceed without a warrant, the seizure cannot be upheld.[5]

---

[5] For the reasons stated above, "the government's arguments regarding collective knowledge doctrine and its effect on the Court's earlier determination with respect to whether the green Lexus had an immediate apparent nexus to crime" fail not only because the police did not have probable cause to believe the Lexus contained instrumentalities of crime, see infra pp. 1-3, but also because the police did not have a "lawful right of access" to the Lexus under to the "plain view" doctrine. The collective knowledge doctrine is irrelevant to the issues presented in this case.

In response to the Court's query as to "whether the officers viewed the license plate of the green Lexus from a lawful vantage point," there is absolutely no evidence in the record that any of the officers viewed the license plate of the green Lexus from a lawful vantage point. It is, of course, *the Government's* burden to introduce evidence sufficient to justify any warrantless search. See Katz v. United States, 389 U.S. 347 (1967).

Finally, even if the Court denies the separately filed Defendant's Motion to Strike Exhibits and considers the exhibits the Government now seeks to introduce on the issue of whether or not Mr. Dubose had a reasonable expectation of privacy in his mother's back yard, the

WHEREFORE, for the foregoing reasons, the Court should deny the Government's

motion to reconsider.


Respectfully submitted,

A.J. KRAMER
Federal Public Defender


/s/
_____

DAVID W. BOS.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500

_____

information contained in the exhibits in now way refutes the seven factual findings the Court has made on the issue of whether or not Mr. Dubuse had a reasonable expectation of privacy with respect to the property upon which the vehicle was parked when it was seized: 1) Mr. Dubose parked the vehicle in the backyard, manifesting a subjective intent to protect the vehicle from public intrusion; 2) Mr. Dubose' mother resided at the address; 3) Mr. Dubose' brother claimed the Lexus parked in the backyard belonged to the Mr. Dubose; 4) Mr. Dubose' brother parked his own vehicle on the property in a similar manner, suggesting that it was a common practice for the resident's children to do so; 5) Mr. Dubose' affifavit confirmed that his mother lived at 631 Emerson Street; 6) Mr. Dubose regularly visited his mother; and 7) Mr. Dubose left personal items on the property believing that they would not be disturbed. Memorandum Opinion at p. 13-14. None of these factual findings are refuted by the exhibits the Government seeks to admit. Nor do the Government's exhibits refute that 1) Mr. Dubose "exhibited an actual or subjective expectation of privacy" and 2) "the expectation is one that society is prepared to recognize as reasonable." Katz v. United States, 389 U.S. 347, 361 (1967).

Indeed, the most relevant fact contained the Government's exhibits is Ms. Dubose chilling grand jury testimony about what caused *her* concern when she looked out her window on the day of her son's arrest: not the presence of her son's car parked in her backyard, but "[seeing] a man back there and I was like, 'what's this man doing in my yard?" Government Exhibit 2 at p. 7.

9

## <u>CERTIFICATE OF SERVICE</u>

I, David W. Bos., Assistant Federal Public Defender, hereby certify that a copy of the motion has been served upon Wanda Dixon, Esquire, Assistant United States Attorney.

/s/

_____

DAVID W. BOS
Assistant Federal Public Defender

**DATE:**

10