## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**EDDIE DUBOSE,**

**Defendant.**

**Criminal Action No. 05-0372 (JDB)**

### MEMORANDUM OPINION

Presently before the Court is the government's motion for reconsideration of the Court's April 19, 2006 Order granting in part defendant's motion to suppress physical evidence recovered in connection with his arrest. In the Memorandum Opinion that accompanied that Order, the Court suppressed all evidence recovered from the seizure and subsequent search of a green Lexus parked in the backyard of the home of defendant's mother, but denied the motion with respect to the evidence recovered from a search of defendant's person. For the reasons that follow, the Court will grant in part and deny in part the government's motion to reconsider that ruling, and will grant defendant's motion to strike certain new evidence that the government seeks to submit regarding an issue that was previously litigated and decided.

### BACKGROUND

The factual background of defendant's arrest, the search of his person, and the seizure and search of the green Lexus are detailed fully in the Court's April 19, 2006 Memorandum Opinion, and will not (except when particularly pertinent) be repeated here. See United States v. Dubose, Criminal Action No. 05-372, at 1-5 (D.D.C. Apr. 19, 2006) (Memorandum Opinion) ("Dubose

-1-

Mem. Op."). That earlier decision also describes the procedural history of defendant's motion, the subsequent rounds of briefing, and the representations of counsel at various hearings and status conferences held with the Court. See id. at 5-10.

To say that the proceedings in connection with defendant's motion to suppress have been "protracted," Gov't Mem. Supp. at 1, is an understatement. In total, the government submitted six briefs in connection with the motion (not including the present motion to reconsider and attendant reply). Defendant's motion to suppress was initially filed on February 9, 2006. One week later, the government filed an opposition. It then filed a "supplement" to its opposition on February 23, 2006 -- just one day before the scheduled suppression hearing. At the suppression hearing, the government was unprepared, and, consequently, unable to engage in meaningful discourse with the Court regarding some of defendant's legal arguments, including the significance of United States v. Christian, 187 F.3d 663 (D.C. Cir. 1999). The Court specifically directed the government to address these arguments in writing after the hearing. Three weeks later, the government untimely filed a "supplemental" document, simultaneously with a motion for an extension of time. Thereafter, the government filed a motion to submit another "supplement" to the "supplemental" filing, bringing its total number of filings at that time to four.

A status conference was held on March 29, 2006, following the receipt of defendant's reply. At that conference, the government admitted that its previous filings were based on a "serious misconception" of the facts. Tr. of 3/29/06 at 8. Specifically, the government had thought that the green Lexus was seized from a public street. Tr. of 3/29/06 at 3, 5, 8. The government was not prepared to address the Court regarding how its arguments were affected by the actual facts, however. Id. at 4, 8. Accordingly, the Court instructed the government to

-2-

submit, within two days, a document outlining the arguments that remained viable in light of the

actual facts.  Id. at 17.  The Court specifically addressed the government as follows:

> . . . I need to know what issues I have to address in resolving this, and it seems to me that
> you have an . . . obligation to me. . . .  I need to know whether I have to take the time to
> address [certain issues].  And I think . . . -- it's your obligation to tell me, since you
> misunderstood the facts, whether the government is continuing to make the arguments
> that it has made.

Id. at 15-16.  Although particularly interested in two specific issues -- (1) the government's

argument that the vehicle could be seized based on the District's civil forfeiture laws; and (2) the

government's argument that the vehicle could be seized because it was unregistered, id. at 15-16,

17, 18 --  the Court specifically advised the government not to "fail to look at all the issues."  Id.

at 18.   The government was clearly instructed that if there was anything else it thought the Court

needed to know with respect to issues other than the two specifically enumerated, then it should

address them in the filing as well.  Id.

In its subsequent filing, the government expressly conceded that its argument regarding

the ability of the officers to seize the car based upon its lack of registration was no longer viable

in light of the true facts.  Gov't Opp'n of 3/31/2006 at 1 (dkt. no. 25).  The government advanced

three justifications for the seizure from private property: (1) defendant's alleged lack of a

reasonable expectation of privacy in the property; (2) the plain view doctrine; and (3) the

defendant's alleged status as a recent occupant of the vehicle under Thornton v. United States,

541 U.S. 615 (2004).  Id. at 1-2.  Neither the previously-advanced civil forfeiture argument, nor

the defendant's arguments based on Christian, were mentioned.  Id.  In response, defendant filed

a supplemental document and attached an affidavit regarding his relationship to the property.

Def.'s Suppl. of 4/13/2006 & Def.'s Aff. (dkt. no. 27).  The government's subsequent reply

(which exceeded the applicable page limit) urged the Court to reject defendant's affidavit or, in the alternative, to "allow the government to cross-examine the assertions made therein, and to submit evidence in rebuttal thereof." See Gov't Reply of 4/13/2006 at 2 n.2. By minute order dated April 14, 2006, the Court advised the parties that it would "decide the motion to suppress at the upcoming Status Conference on April 19th" and would "permit very brief, controlled cross-examination of defendant on his affidavit" at that time. See United States v. Dubose, Criminal Action No. 05-372 (D.D.C. Apr. 14, 2006) (Minute Order).

At the April 19, 2006 status conference, the Court offered the government the opportunity to "engage in brief . . . focused cross-examination on the subject matters raised in [defendant's] affidavit." Tr. of 4/19/2006 at 3. The government, however, voluntarily declined:

> [THE GOVERNMENT]: Before that happens, Your Honor, this affidavit is going to be the defense's entire submission with regard to standing,[1] is that correct? I mean this is all the Court has permitted. . . . I'm asking if you're permitting him to do anything else other than what's in the four corners of this affidavit with regard to establishing standing in the place where --
> THE COURT: We don't use the term *standing* . . .
> [THE GOVERNMENT]: *Expectation of privacy*, as has been elucidated by the court of appeals.
> THE COURT: There is nothing further that the defendant has proffered and except for the opportunity to quote-unquote redirect after your cross-examination, I would assume that [defense counsel] is not going to be offering anything else but we'll let him speak to that first before I decide whether he can. . . .
> [DEFENSE COUNSEL]: . . . I have no expectation at this point to put on any type of additional evidence. . . .
> [THE GOVERNMENT]: That being the case, Your Honor, I have no cross-examination on this affidavit. However, I would like the Court to hear argument on why I believe it is insufficient to establish any standing.
> THE COURT: All right. So no cross-examination even after you said you wanted to cross examine.

---

[1]The government persists in confusing the terms "reasonable expectation of privacy" and "standing." Although they address conceptually similar constitutional doctrines, they are, nevertheless, distinct. The "reasonable expectation of privacy" requirement is rooted in the Fourth Amendment, while the "standing" inquiry is a creature of Article III.

Id. at 3-4.  As anticipated, the Court ruled on defendant's motion from the bench.  Id. at 6-9.  A

written Memorandum Opinion was posted later that day, finding that: (1) defendant's arrest was

unlawful under Christian, but the search of his person did not violate the Fourth Amendment

based upon the inevitable discovery doctrine; (2) the facts in the record, reasonable inferences

therefrom, and the Court's interpretation of case law established that defendant had a legitimate

expectation of privacy in the green Lexus; (2) the seizure of the vehicle was not justified under

the plain view doctrine because it lacked an immediately apparent nexus to crime; and (3) the

seizure of the vehicle could not be justified under Thornton because it was not within defendant's

immediate control at the time of the arrest.  See Dubose Mem. Op. at 10-19.  The government

indicated a willingness to review appeal or reconsideration options, and a briefing schedule was

set.  See Tr. of 4/19/2006 at 9, 10; see also United States v. Dubose, Criminal Action No. 05-372

(D.D.C. Apr. 21, 2006) (Minute Entry).  Thereafter, the government twice sought an extension of

that briefing schedule, see United States v. Dubose, Criminal Action No. 05-372 (dkt. nos. 31,

32) (D.D.C. May 8 & May 15, 2006), and finally filed its motion for reconsideration on May 19,

2006.  See Gov't Mot. Recons.

     A significant portion of the motion challenges the Court's finding with respect to

defendant's legitimate expectation of privacy.[2]  This issue was, as outlined above, discussed at

length during briefing on the motion to suppress -- specifically, in the government's March 31,

2006 and April 13, 2006 filings (dkt. nos. 25 & 28), defendant's filing of April 13, 2006 (dkt. no.

27), and before the Court at the April 19, 2006 Status Conference, see Tr. of 4/19/2006 at 5- 6.

---

[2]It is axiomatic that without such an interest, defendant would be unable to contest any illegal seizure or search of the green Lexus.

The government now seeks to admit two additional pieces of evidence, the existence and subject matter of which was never previously made known to the Court or to defendant. The first exhibit is an affidavit of one of the arresting officers, Officer Jones, regarding his interview of defendant's mother, L'ynda Dubose. <u>See</u> Gov't Exh. 1. The second exhibit is the transcript of the grand jury testimony of Ms. Dubose. <u>See</u> Gov't Exh. 2. According to the government, these exhibits establish that defendant and Ms. Dubose are estranged and that she was unaware that defendant was in the vicinity of her home, let alone parked on her property. The government claims that these exhibits establish that defendant was not visiting Ms. Dubose on the date in question. From this, it allegedly follows that he did not have a legitimate expectation of privacy in Ms. Dubose's backyard, where the green Lexus was parked.

Defendant has moved to strike these items, arguing that there is no justification for the government's failure to offer them earlier, when this issue was litigated. On this point, the government attempts to shift the blame to the Court, explaining its failure as follows:

> On April 14, 2006, the Court directed that the government would only be permitted to have 'very brief, controlled cross-examination of defendant on his affidavit at the [forthcoming] Status Conference.' <u>See</u> Court's Minute Order dated April 14, 2006. The government declined to cross-examine the defendant under those circumstances, because . . . the affidavit of the defendant did not include sufficient information to give rise to a valid, objective expectation of privacy in the backyard of 631 Emerson Street, NW. However, if the government is permitted to rebut the defendant's allegations, the government can show that the defendant was not a social guest in his mother's home, nor was he a resident thereof, nor was he visiting her on this occasion.

Gov't Mem. Supp. at 3. In a footnote, the government further claims that

> [a]t the conclusion of the motions hearing held on February 24, 2005, the Court indicated to the parties that while it would hear additional legal argument, that [sic] the factual record was closed in this case. [Tr. of 2/24/2006 at ] at 75. However, over the government's objection, the Court subsequently accepted an affidavit from the defendant which contained his factual basis for his assertions regarding his expectation of privacy.

The government requests that the Court also accept as evidence its attached affidavit and redacted grand jury transcript to supplement the record on this important point.

Id.

The government's motion devotes much space to identifying what it characterizes as omissions and deficiencies of defendant's affidavit, id. at 2-4, 5, citing case law from other jurisdictions allegedly holding that a familial relationship between the property owner and the visitor is insufficient to establish a reasonable expectation of privacy, id. at 5-6, and seeking to draw fine distinctions between this case and those relied upon by the Court in its earlier Memorandum Opinion, id. at 6-7. The government alternatively argues that the Court erred by overemphasizing the temporal portion of the "immediately apparent nexus to crime" inquiry under the plain view doctrine, id. at 10-13; see Gov't Reply at 1-3, and challenges the Court's factual determinations regarding the relationship of the green Lexus to an undercover narcotics operation that took place approximately one month prior to the date in question, Gov't Mem. Supp. at 8-10 & n.9. The government also argues that the warrantless seizure and subsequent search of the vehicle were justified based on exigency (because vehicles are readily movable), id. at 8 & n.7, and attempts broadly to resurrect other arguments that it had abandoned during the pivotal round of briefing,[3] id. at 10 n.10, 13 n.11.[4]

---

[3] Specifically, the government now claims that it never intended to waive those arguments and states that its decision not to mention them in subsequent filings (despite the Court's request) was based upon its attempt to comply with space limitations. The government is a frequent litigant in this Court, and is certainly apprised of the commonly-employed practice of "incorporating by reference" those portions of previous memoranda for which there is not enough space in a current filing. The government was specifically asked to assess its previous arguments in light of its newfound understanding of the true facts. Hence, those arguments which it did not reassert were implicitly waived, as they were addressed only in relation to a hypothetical set of facts that did not represent the instant case.

[4] The motion to reconsider also advances a brand new argument that defendant's arrest for carrying a dangerous weapon (CDW) was not unlawful under Christian, 187 F.3d 663, because that case involved a different statutory provision and offense. Id. at 13 n.11. The government was given several opportunities -- both orally and in writing -- to make this argument during briefing and at hearings. For example, at the March 29, 2006 status conference, the

In response, defendant argues that there was no probable cause to seize the vehicle for two reasons: (1) the facts of the previous undercover operation do not support a finding that the vehicle itself was an instrumentality of a crime or was used as part of the prior narcotics transaction, Def's Opp'n at 3-4; and (2) under United States v. Collins, 438 F.2d 610 (D.C. Cir. 1971), any pre-existing probable cause based on the earlier undercover operation had dissipated, id. at 2-3. In defendant's view, then, the vehicle could only have been seized with a warrant, or based upon exigent circumstances. Defendant submits that the vehicle could not have been legally seized based upon the plain view doctrine consistent with Coolidge v. New Hampshire, 403 U.S. 443 (1971), id. at 4, because the plain view doctrine does not dispense with the need for exigent circumstances, id. at 7-8. Because the vehicle was seized "several hours" after defendant was arrested, during which time the officers guarded it and prevented it from being tampered with, in the absence of any "alerted criminal bent on flight," "fleeting opportunity on an open

---

Court discussed the legality of the arrest (in the context of the alleged search incident to the arrest), and the government never attempted to distinguish Christian or claimed that the arrest for CDW was legal. Rather, the government chose to argue that when defendant resisted the officers' attempts to handcuff him, he committed a separate offense for which he could have been arrested, which attenuated the original arrest from the subsequent search and rendered suppression an improper remedy. See Tr. of 3/29/2006 at 5, 6-7. Christian was discussed at length by defense counsel at the suppression hearing, see Tr. of 2/24/2006 at 62-64, and was relied upon in the defendant's brief. At the suppression hearing, the government was unprepared to discuss the case, id. at 69-70, but admitted that it was "certainly a good argument," id. at 69. In its written briefs, the government implicitly conceded the arguments of defense counsel. See Gov't Supp. of 3/14/2006 at 1 (summarizing defendant's Christian argument, stating that "[n]otwithstanding defendant's argument, the government contends that the vehicle . . . was lawfully seized for administrative forfeiture . . . ," and never arguing that Christian was distinguishable or that defendant's arrest was valid); see also Gov't Suppl. Response of 3/17/2006 at 1, 5 (discussing the search of defendant's person at length and relying upon the doctrine of inevitable discovery as a means through which the "taint" of the illegal arrest was "purge[d]," but never arguing that Christian involved a different offense and was therefore inapplicable). It is the duty of counsel to become informed of the law, to correctly instruct the Court in that regard, and to zealously pursue the client's interests. The government should have known about Christian, and should have prepared sufficiently for the suppression hearing to discuss its nuances. At the very least, the government should have challenged Christian's pertinence in one of its many subsequent briefs. By not doing so, the government made either a tactical decision or simply erred. Either way, the argument has been waived and will not, at this late juncture, be considered, after the Court has ruled in part based on the government's failure to contest the applicability of Christian.

highway after a hazardous chase," "visible contraband or weapons," "confederates waiting to move the car," or other facts to suggest it was "not practicable to secure a warrant," defendant asserts that the exigent circumstances rationale does not apply.  Id. at 8.  According to defendant, the mere fact that the subject of the seizure was a vehicle is not alone an exigent circumstance. The government's reliance upon Florida v. White, 526 U.S. 559 (1999), is allegedly misplaced because it ignores the fact that Coolidge considered and rejected the same argument that the government advances here.  Id. at 4-7.  Finally, defendant submits that the officers lacked a "lawful right of access" to the vehicle, which is a requirement of the plain view doctrine under Horton v. California, 496 U.S. 128, 136 (1990), id. at 8, 9 nn.4, 5, and the vehicle lacked an "immediately apparent nexus to crime" because it was not sufficiently connected to the previous narcotics transaction.

## DISCUSSION

**1.    The Government's Additional Evidence Will Be Stricken.**

Motions to reconsider suppression orders or reopen suppression hearings rest with the sound discretion of the Court.  See United States v. Watson, 391 F. Supp. 2d 89, 91-92 (D.D.C. 2005) (citing United States v. White, 514 F.2d 205, 206 (D.C. Cir. 1975)).  The D.C. Circuit has "suggested that where the government is asking to reopen a suppression hearing, it must provide a reasonable explanation for its failure to present its proffered evidence initially."  Id. at 94 n.3 (citing McRae v. United States, 420 F.2d 1283, 1289 (D.C. Cir. 1969)); see United States v. Greely, 425 F.2d 592, 593 (D.C. Cir. 1970).  "If . . . the [g]overnment wishe[s] to develop new facts through either an elaboration of or change in the testimony of an officer who had already testified," for example, then "the prosecutor b[ears] some responsibility to suggest to the Court

why these facts had not been elicited" before.  McRae, 420 F.2d at 1289.  There is not much law in this jurisdiction regarding motions to reconsider, but at least one member of this Court has held that a pre-trial request to reopen a suppression hearing may not be granted where the movant "has presented no evidence that is new or was unobtainable before" and has not "articulated any new issues that have become relevant since the original ruling that warrant explanation." Watson, 391 F. Supp. 2d at 94.  It is clear that "[t]he government cannot relitigate the issues resolved by a suppression order without advancing some justification for its failure to develop those issues fully" when the matter was originally litigated.  Greely, 425 F.2d at 593 (citing McRae, 420 F.2d at 1288-89).

In this case, the government has offered no adequate justification for its failure to rely upon the affidavit of Officer Jones or grand jury testimony of Ms. Dubose at an earlier point in these proceedings, before the motion to suppress was granted.  See Greely, 425 F.2d at 594-95 (stating that "[i]n the absence of any explanation for the failure" to introduce the evidence, "the government should not be permitted to introduce it").  Conspicuously absent from the government's memoranda is any claim that this evidence was unavailable or unknown to the prosecution at the time the issue of defendant's reasonable expectation of privacy was litigated. See United States v. Curtis, 2006 WL 782681, at *16 (N.D. Oh. Mar. 24, 2006) (stating that "[t]he government's failure to provide an adequate explanation for failing to present [the evidence at issue], alone, warrants the . . . denial of the [g]overnment's request to reopen the suppression hearing for the purpose of allowing [the evidence to be admitted]").  Instead, the government mischaracterizes the history of this case in an attempt to shift the blame to the Court.  The government begins by asserting that the Court's minute order of April 14, 2006 indicated that the

-10-

factual record was closed, by virtue of language permitting the government to pursue "very brief, controlled cross-examination of the defendant on his affidavit[.]" Gov't's Opp'n to Def.'s Mot. Strike at 3.  Allegedly, this statement led the government to draw a "reasonable inference that the Court had determined that the defendant's submission did not establish sufficient facts to support an expectation of privacy finding." Id. at n.3.

The government's claim is puzzling, and its leap in logic hardly constitutes a "reasonable inference."  To the contrary, it appears that the government made an unwarranted assumption that led to a tactical decision that later proved unwise.  Nothing in the language of the Court's minute order, or its statement to the parties at the April 19, 2006 status conference, suggested that it was inclined to rule in the government's favor on this issue.  The government's claim that it "did not expect that the Court would make a finding that the defendant had an expectation of privacy based solely on an affidavit submitted by the defendant without giving the government the opportunity to rebut the defendant's evidence on that issue" is problematic for two reasons.  First, the Court did not rule "solely" based on defendant's affidavit.  For the most part, defendant's affidavit regurgitated facts that were already part of the record, see Def.'s Aff. at ¶¶ 1-4, and focused on his subjective expectation of privacy in the property, see id. at ¶ 7.  That is a far cry from establishing an objective expectation of privacy, which the Court found based on the record as it existed at that time and reasonable inferences drawn therefrom, as well as relevant case law and the unpersuasiveness of the government's rebuttal arguments.  Second, the Court did not reach its conclusion "without giving the government the opportunity to rebut."  The Court specifically provided the government with an "opportunity to rebut" through cross-examination -- an opportunity that the government declined -- and through oral argument at the April 19, 2006

status conference.[5]

The government's attempt to distinguish <u>Greely</u> is unconvincing, because <u>Greely</u> does not limit the Court's focus to whether the issue was developed at the initial suppression hearing alone, but rather suggests that the relevant focus is upon the entire litigation of the issue. The government is correct that defendant did not focus on the location of the vehicle on private property as a basis for suppression until its filing of March 24, 2006 -- after the initial hearing. But the government, as the entity that carried out the seizure of the green Lexus, was certainly in the best position to know the precise circumstances and facts surrounding the incident, regardless of when defendant drew specific attention to them. <u>See</u> <u>McRae</u>, 420 F.2d at 1287 (recognizing that "[w]hen a pretrial motion is made for the suppression of evidence, the [g]overnment normally has access to the information necessary to justify the conduct of the police"). Indeed, testimony at the suppression hearing held on February 24, 2006 established that the vehicle was "towed from the yard area" of Ms. Dubose's home. Tr. of 2/24/2006 at 48; <u>see also</u> <u>id</u>. at 39 ("the vehicle was . . . parked in the yard"); <u>id</u>. at 43 (asking Officer Jones whether he "took th[]e car keys and went back to the yard where the green Lexus was parked); <u>id</u>. at 38 ( "the officer came over, [and] looked into the yard area where the vehicle was parked"). Moreover, the government filed several briefs following defendant's March 24, 2006 filing, and more than one status

---

[5]The Court never suggested that the government could not pursue relevant impeachment inquiries sufficiently related to defendant's affidavit during cross-examination. The subject of defendant's affidavit was his reasonable expectation of privacy in Ms. Dubose's property, which was likewise the subject on which the Court agreed to let the government pursue cross-examination. Because the affidavit of Officer Jones and the grand jury testimony of Ms. Dubose are similarly devoted to this issue, it is nonsensical for the government to argue that it thought it could not use such items if the need arose. The Court's statement that any cross-examination would be "very brief" and "controlled" was meant to foreclose an unnecessarily lengthy proceeding, and to protect the defendant from examination on subjects beyond the scope of his affidavit, which could implicate his Fifth Amendment rights -- objectives that, given the tortured history of the motion proceedings, were not unwarranted.

-12-

conference was held after that date.  The vehicle's location on private property was a key focus of

the arguments -- written and oral -- presented after March 24, 2006.  Under the circumstances of

this case and its procedural history, the relevant inquiry is what the government could have done

between March 24, 2006 and April 19, 2006 -- before the Court ruled on the motion to suppress,

but after it was clear that the location of the vehicle in Ms. Dubose's backyard might be a basis

for suppression.  As of March 24, 2006, then, the government knew defendant's arguments, and

had ample time (and filings) in which to contest them, but simply failed to do so.

Not only were the affiant and grand jury transcript at the government's disposal, yet never

proffered, while the suppression motion was being litigated, but the substance of the evidence

was known to the government and never relied upon.  Quite simply, the only reason why these

materials (and the facts they contain) did not surface before the Court's April 19, 2006 decision

was issued is because the government neglected to do its homework.[6]  The government has

offered no reasonable justification for its attempt to relitigate arguments previously rejected by

offering evidence that could -- and should -- have been presented when those arguments were

considered.  See United States v. Coward, 296 F.3d 176, 181 (3d Cir. 2002) (emphasizing the

"need for an adequate explanation of the failure to present relevant evidence earlier" and the duty

of the district court to "evaluate that explanation and determine if it is both reasonable, and

adequate") (citing United States v. Kitchart, 134 F.3d 529, 532 (3d Cir. 1998)).  Accordingly, the

Court will grant defendant's motion to strike, and neither the grand jury testimony of Ms. Dubose

---

[6]Even if a misunderstanding on the part of the government could constitute a sufficient justification for the Court to reopen the suppression hearing, see Greely, 425 F.2d at 594-95 (stating that "[a]lthough it is apparent from the record that this was simply an honest misunderstanding, we find sufficient justification to permit the government to reopen the issue and introduce this additional evidence"), such error is not cited here as the reason for the government's failure.  Instead, the government relies upon other rationales that are not, in the Court's view under the circumstances of this case, plausible.

nor the affidavit of Officer Jones will be accepted.

**2.      The Court Properly Concluded that Defendant Possessed a Reasonable Expectation of Privacy in Ms. Dubose's Backyard.**

_____The government again argues that defendant's affidavit was insufficient to establish a legitimate expectation of privacy in Ms. Dubose's property.[7]  This argument was made, considered, and rejected at the April 19, 2006 status conference.  Tr. of 4/19/2006 at 5-9.  The Court is no more persuaded now than it was when it ruled on April 19.  Indeed, even if the Court had not accepted defendant's affidavit, the same conclusion would have been reached, because the affidavit was not central to the Court's analysis.[8]  The affidavit did not expand on what already had become known based upon the facts in the record and reasonable inferences drawn therefrom, viewed in light of applicable law.

Prior to the submission of defendant's affidavit, the record included the following facts: (1) the green Lexus was parked in the backyard of 631 Emerson Street; (2) defendant was observed exiting that vehicle; (3) his mother resided at 631 Emerson Street on that date; (3) his brother was observed trying to similarly park his vehicle in the backyard at that address; (4) the brother told the officers that the green Lexus belonged to defendant; and (5) the search of the green Lexus recovered personal items and mail matter belonging to defendant.  It is reasonable to

---

[7]The issue is not whether the property is per se incapable of supporting a reasonable expectation of privacy (for example, by virtue of its visibility to or accessibility by the public), as the government has never made this argument. The question is only whether defendant has a reasonable expectation of privacy in the property.

[8]The Court does not understand the government's motion to focus on the conclusion that defendant had a legitimate expectation of privacy in the green Lexus.  There is good reason for that, because defendant was observed exiting the vehicle, personal items and mail matter belonging to defendant were found in the vehicle, defendant possessed the key to the vehicle when arrested, and defendant's brother stated that the vehicle belonged to defendant.  It is of no consequence that, as the government argues, defendant has never affirmatively admitted to ownership of the vehicle, because "even non-proprietors and occasional users may . . . have an interest that qualifies as a reasonable expectation of privacy."  Dubose Mem. Op. at 12.

-14-

infer from these facts that defendant was visiting his mother, and had parked the green Lexus in her backyard. These facts also reasonably support the inference that it was a regular occurrence for Ms. Dubose's children to park their vehicles in her backyard -- not only does it appear that defendant did so, but so did his brother, who quickly recognized defendant's vehicle.

Defendant's affidavit reflected that defendant: (1) "regularly visit[ed his] mother at" 631 Emerson Street, Def.'s Aff. at ¶ 6; (2) often left personal items at his mother's home, id.; and (3) actually had a subjective expectation of privacy in the property, always believing that items he left on his mother's property "would not be disturbed by any person other than [his] mother," id. at 7. Hence, the affidavit bolstered the conclusions already reasonably supported by the existing record. The Court's conclusion was strongly influenced by the fact that

> th[e] legitimate expectation of privacy analysis is somewhat shaped by social norms and practices. . . . [C]ertainly family visits that involve parking one's vehicle on one's mother's property that one has him or herself lived on for substantial parts of one's life is the kind of social custom that serves valuable functions that society recognizes. . . . [P]arking on the property of one's host is a common social practice, and when a son visits a mother's home, the natural course is to park a vehicle in that way, whether in a driveway or the backyard, but on the property in order to keep the vehicle safe from unwarranted or unwanted intrusion and general access by the public.

Tr. of 4/19/06 at 7; see Dubose Mem. Op. at 14. This conclusion was most directly grounded in the Court's interpretation of Minnesota v. Carter, 525 U.S. 83, 99 (1998) (Kennedy J., concurring), and Morton v. United States, 734 A.2d 178, 182 (D.C. 1999), not defendant's affidavit. See Dubose Mem. Op. at 14-15 & n.5.

The Court has already explained at length why it is not necessarily accurate (in light of the significance of Justice Kennedy's concurrence in Carter) that "[a] person who is simply a [social] guest on the premises, without more, does not have a reasonable expectation of privacy

in the place where he is a guest." Gov't Mem. Supp. at 4.[9]  The Court determined that, based

upon the record and reasonably supported inferences, defendant's relationship to the property

owner -- not just as a distant family member or, for example, one of thirty grandchildren, see

New York v. Ponder, 429 N.E. 2d 735 (N.Y. 1981), but as her son -- exceeded the relationships

found sufficient in other cases to support a legitimate expectation of privacy.  See Dubose Mem.

Op. at 14-15 n.5.  The facts in the record, and the reasonable inferences supported by them,

sufficiently carried defendant's burden to show a legitimate expectation of privacy.  Hence, it

became the government's burden to undercut that showing. There was nothing in the record, on

April 19, 2006, to suggest that the mother-son relationship of Ms. Dubose and defendant was

atypical or strained, or to suggest that defendant was not at least a social guest at 631 Emerson

Street.  Perhaps a different conclusion would have been supported if the government had relied

upon the evidence it now offers, but it did not do so.

        None of the government's efforts to distinguish the cases examined and relied upon by the

Court are convincing.  The government never discusses the significance or rationale of Justice

Kennedy's concurrence in Carter, choosing instead to rely on cases from other jurisdictions

(which, clearly, are not controlling).  See Gov't Mem. Supp. at 5.  Simply put, it matters not

whether the state courts of Washington and New York would have reached the opposite

conclusion.  This Court has determined that, under the circumstances of this case, the law of the

---

[9]This statement appears to conflict with the government's earlier recognition that "[i]n order for a person who is not a
resident of the address to show standing, he must show that he is a social guest."  Gov't Mem. Supp. at 2.  Again, the
Court notes that the issue is whether defendant had a legitimate expectation of privacy in Ms. Dubose's property, not
whether he has "standing."

District (and the Court's interpretation of Supreme Court jurisprudence) is more convincing.[10]

Nor can it be that, as the government submits, a person must be physically present on the

property in order to have an expectation of privacy that society recognizes as legitimate.  See

Gov't Mem. Supp. at 6-7.  Neither the Supreme Court nor the D.C. Circuit have ever suggested

that a legitimate expectation of privacy in a place evaporates the moment a person temporarily

ventures out to a nearby location with the intent to return.  If a person's "legitimate presence on

the premises" is not dispositive of the existence of a reasonable expectation of privacy, Gov't

Mem. Supp. at 6 (citing United States v. Salvucci, 448 U.S. 83, 901 (1980), and Rakas v. Illinois,

439 U.S. 128, 147-48 (1978)), then temporary absence from the premises likewise cannot be

dispositive.  The government cannot have it both ways.


　　　　**3.**　　　**The Court Did Not Hold that  the Seizure of the Vehicle Lacked Probable
　　　　　　　Cause.**

　　　　The Court's April 19, 2006 decision was not based upon a determination that the seizure

of the vehicle was unsupported by probable cause.  In fact, the Court explicitly stated that

> [t]he issue before this Court is not whether the police could have, consistent with the
> Fourth Amendment, seized and searched the green Lexus.  Indeed, it may be that the
> officers had probable cause sufficient to convince a neutral judicial official to issue a
> warrant (an issue not before this Court).  But they did not follow that available course.

See Dubose Mem. Op. at 19-20.  The Court further noted that "it appears that counsel for the

government has wisely abandoned her earlier argument that a search of the vehicle would have

been justified based on probable cause . . . " Id. at 16 n.8.   Instead, the Court focused on whether,

"[u]nder the totality of the circumstances, there was [an] exigency or other justification for

---

[10]Oddly, the government relies upon the dissenting opinion in Morton, despite the fact that the Court has made clear
that it considers the majority view of the District of Columbia Court of Appeals persuasive.  Gov't Mem. Supp. at 5.

seizing from private property . . . the vehicle without a warrant." Id. at 20.  The ordinary

requirement of the Fourth Amendment is that seizures be supported by probable cause and a

warrant.  E.g., Horton, 496 U.S. at 134.  When officers lack a warrant, there must generally be

some exigency or other exception; otherwise, the seizure is unlawful.  See id. at 137 & n.7.  As

discussed below, and as the Court previously concluded, there were no exigent circumstances

presented here.  Assuming (without deciding) that the officers had probable cause to seize the

green Lexus, then, they still could not have lawfully done so from private property under the facts

of this case.

**4.       No Exigent Circumstances Justify the Warrantless Seizure of the Green
            Lexus.**

        The facts of this case do not involve exigent circumstances or any other exception to the

warrant requirement.  Despite the government's contentions to the contrary, the protections of the

Fourth Amendment do not dissipate at the automobile door.  Coolidge, 403 U.S. at 461 (stating

clearly that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment

fades away and disappears"); see also Chambers v. Maroney, 399 U.S. 42, 50-51 (1970) (stating

that "[n]either Carroll [v. United States, 267 U.S. 132, 153 (1925),] . . . nor other cases in this

Court require or suggest that in every conceivable circumstance the search of an auto even with

probable cause may be made without the extra protection for privacy that a warrant affords"); cf.

California v. Carney, 471 U.S. 386, 392-93 (1985) (stating that "[w]hen a vehicle is being used

on the highways, or if it is readily capable of such use and is found stationary in a place not

regularly used for residential purposes -- temporary or otherwise -- the two justifications for the

vehicle exception come into play").  The essence of a vehicle, then, is not what serves to exempt

its warrantless seizure from otherwise-applicable constitutional requirements.  Compare White,

526 U.S. at 561 (finding that officers do not need a warrant to seize "an automobile from a public

place when they have probable cause to believe that it is forfeitable contraband"), with Coolidge,

403 U.S. at 461-62 (finding that officers needed a warrant to seize an automobile from the

arrestee's driveway under circumstances similar to those presented here).  The so-called

"automobile exception" is based on the impracticability of obtaining a warrant and the ability of a

vehicle to be "quickly moved out of the locality or jurisdiction in which the warrant must be

sought."  Carroll, 267 U.S. at 153; see also Coolidge, 403 U.S. at 459-60.   The underlying

concern is the likely deprivation of valuable evidence, whether the vehicle itself or contraband

located within.  See, e.g., Chambers, 399 U.S. at 51.  The "automobile exception" to the warrant

requirement, then, is simply a crystallization of specific exigent circumstances that must be

present to justify the warrantless seizure of a vehicle in a particular case.

Those exigent circumstances were not present with respect to the green Lexus.  To begin

with, it was located on private (indeed, residential) property, not on a public street or

thoroughfare.  The officers had already taken the key, and there was no indication that another

key remained unaccounted for.  Defendant was not near the vehicle when the officers made

contact with him, and there was no reason to believe he would try to regain possession of the

vehicle -- each time he resisted arrest, he ran further from the vehicle, in the opposite direction.

The officers also never saw anyone else in the vicinity of the vehicle until defendant's brother

tried to park his own vehicle in the backyard, after they had already secured the vehicle from

relocation or tampering.  Indeed, the officers guarded the vehicle for a matter of hours before it

was ultimately towed.  The Court is unaware of any cases applying the "automobile exception" as

a justification for the seizure of a vehicle from a private backyard under such circumstances.  See

Coolidge, 403 U.S. at 460-62; see also United States v. Payne, 429 F.2d 169, 171-72 (9th Cir.

1970) (holding that the so-called "automobile exception" did not justify the warrantless search of

an unoccupied vehicle located in an individually-allotted campsite despite facts that would

support the officer's reasonable belief that the vehicle contained illegal narcotics); cf. Chambers,

399 U.S. at 50-51 (finding that officers did not violate the Fourth Amendment by searching a

vehicle seized from a public highway at the stationhouse several hours later, without a warrant);

Carroll, 267 U.S. 132 (finding that officers did not violate the Fourth Amendment by searching a

vehicle seized from a public road); Brinegar v. United States, 338 U.S. 160 (1949) (same,

applying Carroll); Husty v. United States, 282 U.S. 694 (1931) (same).

        The doctrines of hot pursuit and search incident to arrest, as well as the exceptions for

officer safety and former vehicle occupants, are inapplicable under the facts here.  Nor can the

seizure be justified under the emergency or community caretaking exceptions, as the government

has never argued that the vehicle itself constituted a danger to the community.  Because the

vehicle was locked and guarded by police officers, there was no reasonable concern that it

contained something dangerous that could have been obtained by a member of the public.  It is

also undisputed that there was no emergency at 631 Emerson Street to which the officers were

responding.  Finally, preventing the destruction of evidence cannot be used as a justification for

the warrantless seizure here.  There is no indication that evidence could have decomposed or

otherwise been destroyed during the time it would have taken to procure a warrant.  The Court

again notes that several hours passed between defendant's arrest and the time that the vehicle was

towed, during which the officers physically guarded the vehicle and prevented its contents from

being removed or tampered with.

Constitutional protections of the security of persons and property must be carefully guarded by the courts, and any exceptions must be convincingly articulated and supported by the facts of the case.  See, e.g., McDonald v. United States, 335 U.S. 451, 456 (1948).  Mindful of this long-standing principle, and having twice considered the arguments of the government in light of the actual circumstances of this case,[11] the Court concludes that no exigent circumstances were present and no applicable exceptions to the warrant requirement apply here.[12]

### 5.    The Seizure of the Vehicle Was Not Justified Under the Plain View Doctrine.

In certain circumstances, the plain view doctrine serves to excuse the lack of a warrant. See Horton, 496 U.S. at 133, 134.  It does not, however, dispense with the probable cause requirement.  Id. at 136, 137 & n.7 (stating that "'[p]lain view alone is never enough to justify a warrantless seizure,'" and describing this reality as a "'corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless . . . seizure absent 'exigent circumstances'") (quoting Coolidge, 403 U.S. at 468) (Stewart, J., concurring).  In order for the plain view doctrine to apply in this case, the object of the seizure must have had an incriminating character that was "immediately apparent," Horton, 496 U.S. at 136-37, and already exposed to view, see Arizona v. Hicks, 480 U.S. 321, 324-25 (1987), when officers noticed it from a lawful vantage point, Horton, 496 U.S. at 136.  The officers must also have had a "lawful right of access" to the item.  Id. at 137 & n.7; see also United States v. Washington, 12 F.3d 1128, 1132-

---

[11]The government did not argue the presence of exigent circumstances when the motion to suppress was originally litigated.  This, apparently, is a new argument advanced on the motion for reconsideration.

[12]The plain view doctrine, which is an exception to the warrant requirement, is analyzed separately below.

33 (D.C. Cir. 1994). It is well-settled that the discovery of the seized object need not have been inadvertent. Horton, 496 U.S. at 130.

In its April 19, 2006 Memorandum Opinion, this Court found that the plain view doctrine did not justify the seizure of the green Lexus because the vehicle lacked an immediately apparent nexus to crime. After having further reviewed United States v. Garces, 133 F.3d 70 (D.C. Cir. 1998), in connection with the government's motion to reconsider, the Court acknowledges that this Circuit has adopted the collaborative knowledge doctrine[13] and, accordingly, it was not improper for Officer Jones to have his colleague verify that the green Lexus was the same vehicle involved in the undercover operation conducted during the previous month. Nonetheless, the Court's ultimate conclusion remains unchanged.[14]

Generally, the plain view doctrine functions to immunize the seizure of an object that is already exposed to view and has an immediately apparent nexus to crime when: (1) the officers are lawfully present pursuant to a warrant, but the object seized is not listed on the warrant or is unrelated to the particular activity or law enforcement purpose that forms the basis for the warrant having been issued; (2) the officers notice the object when they are present on the property with lawful consent; (3) the officers notice the object when they are lawfully present

---

[13]Under the collaborative knowledge doctrine, whether the object of a seizure has an immediately identifiable nexus to crime is judged from the perspective of the Metropolitan Police Department as a whole, rather than from the perspective of the individual officer who first noticed the vehicle. See Garces, 133 F.3d at 74-76. Under this concept, officers are presumably free to collaborate with one another in order to determine whether there is a nexus to crime as long as they do not engage in some sort of illegal activity -- generally, conducting some further search or seizure that is unconstitutional -- when doing so. See Pindell, 336 F.3d at 383.

[14]The Court has not changed its position regarding whether there was an immediately apparent nexus to crime. That inquiry is essentially an analysis of whether the seizure was supported by probable cause, see, e.g., United States v. Pindell, 336 F.3d 1049, 383 (D.C. Cir. 2003); see also Soldal v. Cook Cty., 506 U.S. 56, 69 (1992); Texas v. Brown, 460 U.S. 730, 733, 742-43 (1983) -- an issue that the Court did not explicitly consider in its prior Memorandum Opinion and, likewise, need not decide here.

because they are responding to an emergency or reacting to some other exigency; or (4) the officers are validly executing a lawful arrest when they notice the object.  See Coolidge, 403 U.S. at 134-36.  In these examples, the presence of the officers causes no invasion of privacy because it was justified, either in fact or by law.  See id.  The invasion is instead caused by the seizure of the object, thereby offending a possessory (not privacy) interest.  See Horton, 496 U.S. at 133, 134.  In a sense, then, the plain view doctrine may be understood as constructively transferring the legitimacy of the officers' presence to the seizure of the object, after which the seizure -- though still an invasion, either of privacy or of some possessory interest -- is not considered unconstitutional, because it is not unreasonable.

The circumstances of this case differ markedly from the more typical situations in which the plain view doctrine has been applied.  In order to seize and tow the vehicle, the officers had to invade Ms. Dubose's property -- they were not present with consent, or acting pursuant to a warrant, or reacting to any legitimate exigency, and there was no indication of any ongoing emergency in the backyard of 631 Emerson Street.  To be sure, the officers were located on the public street when they viewed the green Lexus (which presumably satisfies the "lawful vantage point" and "already exposed to view" elements of the plain view doctrine), but the government has not established that the officers had a lawful right of access to the vehicle.  The plain view doctrine does not permit the seizure of an object from property that is protected by the Fourth Amendment simply because the object is visible from a public vantage point -- the mere fact that an object is in open view does not mean that the plain view doctrine applies.  See id. at 133 n.5, 136.

""The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a

-23-

cardinal principle that 'searches conducted outside the judicial process, without prior approval by a judge or a magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'"" Horton, 496 U.S. at 133 n.4 (reaffirming and quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  Hence, it is the government's burden to justify the legality of a warrantless seizure.  See Coolidge, 403 U.S. at 455.  On this point, the government has chosen to argue only that the "lawful right of access component . . . does not apply" -- without citing any legal authority -- because defendant lacks a reasonable expectation of privacy in the property.  Gov't Reply at 4.  But the Court has already concluded otherwise, and has found that it is too late for the government to challenge that conclusion based on evidence not previously presented.  It is telling that the government has never asserted that the officers did not invade Ms. Dubose's property during the seizure, has not argued that the "lawful right of access" element was satisfied, and has not otherwise (with the exception of the argument the Court has already rejected) argued that it does not apply.  The government has simply not given the Court a reason, then, to find that the plain view doctrine excuses the lack of a warrant in this case.  Indeed, the facts of the case establish that it was not only constitutionally necessary for the officers to obtain a warrant, but also reasonable under the circumstances to expect them to do so.  Because they chose not to, the seizure of the green Lexus was unreasonable and violated the Fourth Amendment.  All evidence recovered from the subsequent search of the vehicle shares derivatively in the taint from the seizure, and must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963).

## **CONCLUSION**

For the foregoing reasons, the Court will grant defendant's motion to strike the grand jury

-24-

testimony of Ms. Dubose and the affidavit of Officer Jones.  The Court agrees that the plain view

analysis in its April 19, 2006 Memorandum Opinion must be revised, but concludes that, in any

event, the seizure of the green Lexus was unconstitutional.  Accordingly, all evidence

subsequently recovered from the vehicle remains inadmissible.  A separate order has been posted

on this date.

/s/    John D. Bates

JOHN D. BATES

United States District Judge

Date:  <u>July 5, 2006</u>

*Copies to*:

Wanda J. Dixon
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Room 4235
Washington, DC 20530
(202) 514-6997
Fax: (202) 514-9155
Email: wanda.dixon@usdoj.gov

     *Counsel for the United States of America*

David Walker Bos
FEDERAL PUBLIC DEFENDER FOR D.C.
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Fax: (202) 208-7515
Email: david_bos@fd.org
     *Counsel for defendant*